# DECISIONS

## OF THE

# SUPREME COURT OF MISSOURI.

## FOURTH JUDICIAL DISTRICT,

### MAY TERM, 1842.

---

### DESLOGE & ROZIER v. RANGER, Ex.

In determining whether a contract was a conditional sale or a mortgage, in cases where the form of the instrument is not conclusive either way, resort must be had to the circumstances attending the transaction: And if, upon a full view of the whole matter, doubts may be reasonably entertained as to the real intent of the parties, courts of equity have inclined to regard the transaction as a mortgage.

Appeal from the Circuit Court of Washington county.

SCOTT & FRISSEL for Appellants.

BRICKEY & COLE for Appellee.

*Opinion of the Court, delivered by Napton, Judge.*

This was a bill in chancery brought by Marie T. Ranger, executrix of Lambert Ranger, deceased, for the redemption of a negro girl, conveyed to Desloge & Rozier in 1830. The instrument of conveyance was as follows : "Know all men by these presents, that I, Lambert Ranger, of the county of

Washington, and State of Missouri, this twenty-first day of August, in the year of our Lord one thousand eight hundred and thirty, for and in consideration of the sum of two hundred ($200.00) dollars, lawful money of the United States, the receipt of which I hereby acknowledge, have bargained, sold, and transferred, and by these presents do bargain, sell, and transfer a certain young negro girl named Marie Louise, warranted sound in her body, unto Firman Desloge and Ferdinand Rozier, their heirs or assigns. And by these presents warrant and defend against all claim whatever the right and title to said negro girl. It is, however, understood between the parties, that the said Ranger, his heirs or assigns, can at any time within the space of two years, redeem the said negro girl, by paying and *refunding unto the said Desloge & Rozier* the above sum of two hundred ($200.00) dollars, together with the legal interest from the date above mentioned.

his

LAMERT ⋈ RANGER,

mark.

In the presence of
    JACOB BOAS,
    BAZIL MISPLAY.

It appears from the bill and answer, as well as the testimony of witnesses, that in the summer of 1830, Lambert Ranger was indebted to the firm of Desloge & Rozier in the sum of two hundred dollars; that Ranger being confined to his house by illness, from which he never recovered, was called upon by Desloge, the acting partner of the firm, to settle his account, but being unable *to do so*, executed the above instrument of writing. The answer of Desloge avers that the negro girl was delivered up to him immediately on the execution of the instrument, but that from her tender age he offered to leave her with the complainant, and did so leave her.

The witnesses say nothing of any delivery, but state their impression to have been, that the girl was to remain in possession of Ranger for two years. One witness states that she was present at the sale, and that Desloge said to Ran-

ger, that the girl might stay two years, and if the money was not paid, he would take her away. Ranger died shortly after the sale.

Before the expiration of the two years, Desloge called upon the complainant, and stating that he had need of the services of the girl, in consequence of the illness of his own house servants, requested her to be sent to his house, with a promise that he would return her so soon as his servants should recover. The girl was sent, but was never afterwards in possession of the complainant.

About the expiration of the two years allowed for redemption, Desloge, at the request of Marie T. Ranger, the widow of Lambert Ranger, consented that she might have six months longer to redeem the negro; but she was still unable to do so; and in the year 1835 the negro was sold by Desloge for eight hundred dollars.

There was proof that the two hundred dollars, with interest, had been on one or two occasions tendered to Desloge, but refused. But no proof of any tender until after the expiration of the two years and six months allowed for redemption, by the instrument of writing, and the subsequent parol agreement of Desloge.

It was also in proof that two hundred dollars was a fair price for negroes of the description of the one sold, at the time of the transfer to Desloge & Rozier.

The court decreed that defendants retain $200.00, their debt, and interest for two years, and pay the complainant the balance, amounting to $576, with interest from 13th December, 1836, the date of the writ.

The only inquiry presented by the record is, whether the contract in this case was a security for the repayment of money, or an actual sale. Courts of equity have never denied to parties the power of making contracts for conditional sales, and if the form of the instrument, together with the extrinsic circumstances attending the contract, are conclusive of the intention of the parties, it is not their province to interfere. When the form of the instrument is not conclusive either way, resort must be had to the circumstances attending the transaction. And if, upon a full view of the

*MAY TERM. 1842.*

Desloge & Rozier v. Ranger, Ex.

In determining whether a contract was a conditional sale or a mortgage, in cases where the form of the instrument is

MAY TERM, 1842

Desloge & Rozier v. Ranger, Ex.

*not conclusive either way, resort must be had to the circumstances attending the transaction. And if upon a full view of the whole matter, doubts may be reasonably entertained as to the real intent of the parties, courts of equity have inclined to regard the transaction as a mortgage.*

whole matter, doubts may be reasonably entertained as to the real intent of the parties, courts of equity have inclined to regard the transaction a mortgage. By this rule of interpretation, no injustice is done to the creditor, as he receives his debt and interest, which it was his purpose to secure.

In this case the instrument contains a clause of redemption, and is so far a mortgage. It does not, however, contain any obligation for the repayment of the money, and in that particular, lacks one of the most important features of a mortgage. A remedy against the person of the debtor is essential to a mortgage ; but, as was observed by Judge Marshall, in Conway's Exr. v. Alexander, (7 Cranch, 218,) if this remedy really exists, its not being reserved in terms, does not affect the case. Whether any remedy existed in this case, then, must depend upon the construction to be given to the instrument from extrinsic circumstances, for if the instrument should appear from such circumstances to have been designed as a mortgage, the debt was not merged in the contract of sale, and the creditor had his remedy against the mortgagor, either by foreclosure, or suit upon the original contract. If the instrument was in form and essence a sale, the debt was paid, and no remedy existed against the person of Ranger, and the death of the slave would have been the loss of the purchaser.

The form of this instrument, then, I take not to be conclusive, and we therefore resort to the circumstances attending the transaction, for the purpose of ascertaining the real intention of the parties. In the case of Chapman v. Terrell, (1 Call 280,) a leading case on this subject, Judge Pendleton said "The great desideratum which this court has made the ground of their decisions is, whether the purpose of the parties was to treat of a purchase ; the value of the commodity contemplated, and the price fixed ; or whether the object was the loan of money, and a security or pledge for the repayment, intended." The intention of the parties must then govern the construction of this contract.

In fixing on the marks by which conditional sales are to be distinguished from mortgages, I have seen no case in

which the characteristics of each, are more clearly pointed out, than they have been by Judge Heyward, in the case of Bennett v. Holt, (2 Yergus' Rep.)   His language is this, "Is there a striking desparity in value, between the property conveyed, and the money advanced?   It is, then, undoubtedly, intended as a security.   Is there no price fixed?   It is then, probably, not a sale, but a security only; for had a sale been contemplated, the price would have been agreed on.   Is there a covenant for repaying the money?   If so, it is most probably a mortgage, for repayment is incompatible with a sale.   Does possession remain in the maker?   This circumstance repels the idea of a sale; for the vendee, in case of a sale, would take possession.   But if the price be settled, and there be not any great desparity between the money advanced, and the thing conveyed; if the receiver of the money be not bound to repay it, and there is no covenant to that effect; and if the possession is delivered to the vendee, then it is a sale, and being liable to be defeated, by paying a certain sum on a certain day, it is a conditional sale."

MAY  TERM.
1842.

Desloge &
Rozier
v.
Ranger,   Ex.

Let us examine the circumstances of the present case upon these principles.   Here the price was settled, and the price a fair one, and there was no covenant for repaying the money.   Thus far, the transaction was clearly a sale. But the possession of the negro, remained in Ranger, which fact, according to Judge Heyward, *repels the idea of a sale*.   It is true, that Desloge, in his answer, avers that the slave was duly delivered to him; but without questioning this statement, which is unsupported by the testimony, it is obvious, that this delivery, if it did take place, was purely formal.   The proof is clear, and uncontradicted, that the girl remained in Ranger's house for two years after the sale, and was only got into the possession of Desloge, by the permission of the widow.   I am not prepared to say, as Judge Heyward intimates his opinion to be, that this circumstance is absolutely conclusive against the vendee or mortgagee, and could not be explained; but it is, in my opinion, entitled to great weight in explaining the intent, and understanding of the parties, and is well calculated to throw doubt and uncer-

tainty on a transaction, which otherwise might be clearly a conditional sale. Thompson v. Davenport, 1 Wark, 127.

Ex. There is an other circumstance entitled to consideration, in determining the real nature of this transaction. A pre-existing debt is alluded to by Judge Marshall, in the case of Conway's Ex. v. Alexander, as affording presumptive proof, that a mortgage is designed. In this case, Desloge and Rozier were not traders in negroes, nor from any thing that appears, had they any wish to purchase such property.— They were merchants, and it is clear, that from the friendly feeling they entertained for the family of the Rangers, which they repeatedly aver in their answer,) they had no other wish or design, than to secure the debt which Ranger owed them. The instrument of sale was, therefore, made to Desloge & Rozier, a mercantile firm—not dealing in the purchase and sale of slaves, and the slave sold, was a family servant, and one, therefore, which Ranger would not have parted with, except from his necessitous circumstances, and which he did not part with, except upon express conditions, that he might redeem within a given time.

Upon the whole, it appears to me, that the retention of the possession by Ranger—the existence of a previous debt on his part, and the execution of the instrument to a *mercantile firm*, were circumstances calculated at least, to throw so much doubt over the transaction, as to justify a court of equity in construing it a mortgage.

Decree affirmed.

*Tompkins Judge, dissenting.*

I dissent from the majority of the court, believing that this instrument of writing ought not to be regarded as a mortgage. There is no mutuality preserved. Ranger might redeem within two years, but Desloge & Rozier could not even sue him on that instrument of writing after the expiration of the two years, in case the negro had died, and there is no evidence that they took any note to secure the payment of the money, in the event of the death of the negro. To suppose that they would rely on the implied promise of Ranger to pay an open account, for the goods they

had sold him, in the case of the death of that negro, is to suppose, that they were incapable of managing their own business. I, therefore, believe that neither party ever thought that the bill of sale, given by Ranger to Desloge & Rozier, was to be construed as a mortgage, until, accidentally, the price of negroes rose very high, or rather until the price of money sank very low.