JOSEPH T. DONOVAN, Appellant, v. ADAM BOECK.

Division One, February 25, 1909.

1. **SUIT ON CONTRACT: Demurrer.** Absent a confidential relation, present parties who are *sui juris* and capable of contracting, present a contract made at arm's length, supported by a valid consideration and not obnoxious to good morals or the policy of the law; absent, surprise, mistake, deceit, oppression or any of the protean forms that fraud takes on; and present a written contract somewhat inaccurately drawn, but unambiguous in terms and complete within itself, and which is relied upon by the pleader to the exclusion of any parol agreement, then the question of whether it was error to sustain a demurrer to

the petition pleading the contract *in haec verba* and making a violation of said contract the basis of the suit, turns upon a judicial construction to be put upon the written contract.

2. ———: **Admissions by Demurrer.** A demurrer to the petition only admits facts well pleaded. It does not admit the soundness of conclusions of law in the plea, nor mere conclusions of the pleader on the facts constitutive of the cause of action, nor does it admit the correctness of averments concerning the meaning of the paper pleaded in the bill. So, although the petition averred that the warranty deed from plaintiff to defendant was an equitable mortgage and not a conditional sale, it yet remains for the court, upon a demurrer, to give the written contract set out in the bill its true meaning.

3. ———: ———: **As to Facts.** Nor does a demurrer admit the facts in the sense that such admission can be used as an admission of record at other stages of the case, *e. g.,* a trial on the merits.

4. ———: ———: ———: **Value of Property: Damages.** The petition avers that a warranty deed was an equitable mortgage and not a conditional sale, that the debt amounted to $7,780 and interest and the property was worth $27,000, and that under a written contract set out *literatim* defendant was to sell the property and after paying the debt was to keep enough of the price received to pay the debt and costs and account to plaintiff for the balance. *Held,* that it is not determinate of the issue of law raised by the demurrer of whether the deed was an equitable mortgage or a conditional sale, to concede that the demurrer admits the value of the property and inferentially the amount of damages alleged in the bill, for the point goes only to inadequacy of consideration, and is not decisive of the issue.

5. ———: **Inaccurate But Unambiguous.** A contract may be somewhat inaccurate and still not be ambiguous. The language may be inaccurate but if the court can determine the meaning of the inaccurate language employed the contract is not ambiguous.

6. ———: **Rule for Interpretation: Intention.** There is one main rule common to the interpretation of all contracts, and to it all others must give way. That rule is to get at the meaning of the contract and enforce its true intendment as judicially gathered from all its four corners. It is therefore elementary that the subject-matter of the contract, the relations of the parties to that subject-matter, and the ordinary meaning of the language used in the contract, pass in review.

7. ———: **Mortgage or Conditional Sale: Existing Debt.** A mortgage cannot spring up without an existing debt, enforceable at law, to which the mortgage becomes a security. Without an existent debt there is no mortgage.

8. ———: ———: **Debt Cancelled by Contract: Admissions by Demurrer.** Defendant held plaintiff's live note secured by a live mortgage, and thereupon plaintiff made a warranty deed to defendant, and they entered into a written contract in which it was recited that the consideration supporting it was the cancellation of the mortgage debt and an amicable settlement and the avoidance of a foreclosure. sale. *Held*, that the subsisting debt was cancelled by the contract's express terms, and the transaction was a conditional sale and not an equitable mortgage, and a demurrer to the petition did not admit an allegation that the debt was not cancelled but the note continued to be held by defendant as a live note and the mortgage as a live lien, for that allegation is but the construction of the pleader put upon the written contract set out *in haec verba*.

9. ———: ———: ———: **Mortgage Note Held by Mortgagee.** The possession of the mortgage debt and securities by the mortgagee is an incident but not a controlling one in determining the issue of law raised by the demurrer of mortgage or no mortgage. It is not controlling where there is a written contract declaring the debt cancelled.

10. ———: ———: **Valid Mortgage: Surrendered for Equitable One.** In attempting to determine whether a certain written contract was a conditional sale or an equitable mortgage, it is well to hold in mind that mortgagees, where they hold a valid subsisting mortgage and a valid note for a stated sum, are not prone to exchange them for an equitable mortgage and an implied promise to pay a debt.

11. ———: ———: **Stipulation of No Mortgage.** In spite of the fact that the written contract says that "it is expressly understood between the parties hereto that this instrument shall not be construed as a mortgage," a court of equity would construe it to be a mortgage if that were its plain legal intendment; but where there is no such intendment to be drawn from its scope, purpose and meaning, there seems to be no reason why the parties, out of abundant caution, may not insert such a recital in their contract, to remove all doubt that they understood its meaning.

12. ———: ———: **Laches.** Where the bill does not count on a conditional sale, but on an equitable mortgage, and makes no tender of performance and pleads no excuse for non-performance, the defense of laches is not pertinent, and citation of authorities to support the rule that one who seeks to enforce an option to purchase real estate must by his bill show himself prompt, eager and desirous of performance, is afield.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

. *R. M. Nichols* for appellant.

'(1)  When a grantor in an absolute deed at the same time takes from the grantee a written contract giving the former a certain length of time in which to redeem the premises by paying the amount of the debt or consideration of the deed, and binding the latter to reconvey on such redemption, the two papers together constitute a mortgage.  Book v. Beasly, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335; Chance v. Jennings, 159 Mo. 554; Reily v. Cullen, 159 Mo. 330; Shields v. Russell, 142 N. Y. 290; Turner v. Wilkinson, 72 Ala. 361; Rodgers v. Jones, 92 Cal. 80; Booth v. Hoskins, 75 Cal. 271; Kelly v. Leachman, 2 Idaho 1112; Hawes v. Williams, 92 Me. 483; Snow v. Pressey, 82 Me. 552; Security Sav., Etc., Co. v. Lowenberg, 38 Ore. 159.  (a) One of the indications that the transaction was intended as a mortgage is the provision in the contract that "said Joseph T. Donovan pays said amount within eighteen months from August 5, 1901, viz., or before February 5, 1903, otherwise this agreement is void."  Scott v. Hughes, 124 Ga. 1000; Pearson v. Seay, 38 Ala. 643; Ferguson v. Miller, 4 Cal. 97; Bacon v. Brown, 19 Conn. 29; Bank v. Tenn. Coal, Etc., Co., 62 Oh. St. 564; Thacher v. Morris, 52 W. Va. 220; Knowlton v. Walker, 13 Wis. 264.  (b) Where an absolute deed is given as security for a debt, no personal covenant or promise on the part of the grantor to pay the debt is necessary to make it a mortgage.  Locke v. Moulton, 96 Cal. 21; Dougherty v. McColgan, 6 Gill & J. 275; Rempt v. Geyer, 32 Atl. 266; Horn v. Keteltas, 46 N. Y. 605; Tuggle v. Berkeley, 101 Va. 83; Schreiber v. Leclair,

66 Wis. 579; Russell v. Southard, 12 How. 139. (c) A definite test to determine whether or not an abso-lute deed, executed in consideration of a precedent debt, with an attendant agreement to reconvey the premises to the grantor on payment of the considera-tion, constitutes a mortgage or a conditional sale, is found in the question whether the debt was discharged by the deed, or subsisted afterwards. The language of the contract is unmistakable in that it leaves the debt still due and owing, the grantor being bound to pay it at some future time before he would be entitled to recover back his property. Hall v. Arnott, 80 Cal. 348; Keithley v. Wood, 151 Ill. 566; Helm v. Boyd, 142 Ill. 370; Hughes v. Sheaff, 19 Iowa 335; Riley v. Starr, 48 Neb. 243; Budd v. Van Orden, 33 N. J. E. 143; Todd v. Campbell, 32 Pa. St. 250; Ruffler v. Womack, 30 Tex. 332. (d) The fact that the grantee retained possession of the notes and deed of trust, without cancellation, and a surrender of the same, from the date of the agreement, August 5, 1901, until he sold the property, September 18, 1903, raises the pre-sumption that the debt was not extinguished by the conveyance and that a mortgage was intended. Ennor v. Thompson, 46 Ill. 214; Wright v. Mahaffey, 76 Iowa 96; McMillin v. Bissell, 63 Mich. 66. (e) The fact that the property, as admitted by the demurrer, was worth $27,000 when the conveyance was made for $7,780, is a strong circumstance showing that the par-ties intended the conveyance as a mortgage. Todd v. Day, 106 Mo. 278; Glass v. Heironymus, 125 Ala. 140; Husheon v. Husheon, 71 Cal. 407; Chapman v. Ayer, 95 Ga. 581; Helm v. Boyd, 124 Ill. 370; Conlee v. Heying, 94 Iowa 734; Burch v. Nicholas, 26 Ky. Law Rep. 264; Kemp v. Earp, 42 N. C. 167; Bank v. Warner, 92 Tex. 226; Rich v. Doane, 35 Vt. 125; Thacher v. Morris, 52 W. Va. 220; Russell v. Southard, 12 How. 139; Simpson v. Bank, 93 Fed. 309. (f) The transaction in itself and the averments

of the petition show that Donovan was in embarrassed circumstances and unable to pay the debt, and that it was the intention to create a mortgage. Reed v. Reed, 75 Me. 275; Montgomery v. Beeches, 31 Atl. 451; Steele v. Black, 59 N. C. 427; Gilchrist v. Beswick, 33 W. Va. 168; Butler v. Butler, 46 Wis. 430. (g) The possession by the grantee under a contract for an accounting of rents and profits is evidence of an intention to create a mortgage. Murdock v. Clark, 24 Pac. 272; Clark v. Landon, 90 Mich. 83. (h) The circumstance that the defeasance contract provides that "this instrument shall not be construed to be a mortgage" is not any more conclusive than if it had provided that it was a "conditional sale," because after all the entire transaction must be construed together. Wilcox v. Tennant, 13 Tex. Civ. App. 220. (2) Where there is doubt as to the meaning of the parties to a contract, as to whether a conditional sale or right to redeem is intended, the transaction must be construed in favor of a mortgage. Turner v. Shaw, 44 Mo. 229; Morley v. Dryden, 57 Mo. 226; O'Neil v. Chappell, 62 Mo. 207. (3) No agreement of the parties at any time can take away or limit the right of redemption. Once a mortgage always a mortgage. Turner v. Shaw, 44 Mo. 429; Cobb v. Day, 106 Mo. 295.

*Wm. F. Smith* for respondent.

(1) A demurrer admits only facts which are well pleaded. In Missouri, it does not admit the amount of damages to be assessed where an inquiry of damages follows upon an interlocutory judgment. Nor does a demurrer admit averments concerning the meaning of a paper, nor conclusions of law. Bliss on Code Pl., secs. 418, 420, 636; 15 Mo. 187; 1 Phil. on Ev., 786; McKenzie v. Mathews, 59 Mo. 99; 21 Wall. 430; 68 N. Y. 298. (2) The contract of August 5, 1901, is not ambiguous in law. "No matter how difficult it is to interpret an instrument, if the court does finally

interpret it, there is no ambiguity about it which will warrant the introduction of parol testimony." 1 Ency. of Ev., pp. 826-841; Riggs v. Meyers, 20 Mo. 239. (3) "Mere inadequacy of price, or any other inequality in the bargain is not, however, to be understood as constituting, *per se,* a ground to avoid a bargain in equity. However, there may be such an unconscionableness or inadequacy in a bargain, as to demonstrate some gross imposition or undue influence, and in such case courts of equity ought to interfere upon satisfactory ground of fraud. But then such unconscionableness or inadequacy of price should be made out as would (to use an expressive phrase) shock the conscience, and amount in itself to conclusive and decisive evidence of fraud." 1 Story's Eq. Jur., secs. 244-246; Pollard v. Lyman, 2 Am. Dec. 63 and note 71; Robertson v. Smith, 11 Tex. 211; Rue v. Dole, 107 Ill. 283; Holmes v. Fresh, 9 Mo. 200; Cobb v. Day, 106 Mo. 301; Keith v. Browning, 139 Mo. 190; Hardwick v. Hamilton, 121 Mo. 465; Railroad v. Brown, 157 Mo. 326; Maloney v. Webb, 112 Mo. 575; Phillips v. Stewart, 59 Mo. 491; Harlan v. Nation, 126 Mo. 97. (4) "In passing on transactions of this class, the understandings and purposes of the parties thereto are to be considered and respected as in other cases. If they intended an extinguishment of the debt, and the vesting of an absolute title subject only to an agreement to reconvey upon specific terms—as a payment of an amount equal to the cancelled debt and interest—the objects of the arrangement are not to be defeated by turning the transaction into a mortgage when the parties intended no such result. When the parties intended a conditional sale, and not a mortgage, and make their contract in accordance with their intentions, it is not the province of the court to circumvent or frustrate their intentions." 44 Mo. 429; 7 Cranch 237. (5) It was not essential to the cancellation and extinguishment of the subsisting mortgage

debt and the lien that the note·itself evidencing the debt be cancelled and released of record, or delivered up immediately. The conveyance paid and extinguished the debt and discharged the lien, and the writing expressly records that fact, and that is all that is required. The conduct of the parties comports with that understanding also. Slowey v. McMurray, 27 Mo. 113; Turner v. Kerr, 44 Mo. 432; Wolff v. Bobb, 148 Mo. 335; Saxton v. Hitchcock, 27 Barb. (N. Y.) 220; Bailey v. Trust Co., 188 Mo. 483. (6) Since appellant Boeck owned the note and mortgage at the time the warranty deed to the mortgaged premises was delivered to him, the transaction resulted in a merger, in law, and the indebtedness became cancelled in law, even though the mortgage was not at the time released of record. Wonderly v. Giessler, 118 Mo. App. 708. (7) The facts and circumstances show that appellant was and is guilty of such laches as that a court of equity should not and will not favorably entertain his plea under the circumstances shown. And since the laches arise out of the facts of the case, the defense of laches can be invoked even though that defense was not pleaded, and can be raised by demurrer. Hatcher v. Hatcher, 139 Mo. 613; Stevenson v. Smith, 189 Mo. 447; Dexter v. McDonald, 196 Mo. 403. (8) The warranty deed from Donovan to Boeck, which is absolute in form and terms, must be construed according to its terms and purport, both at law and in equity, until it is shown by convincing proof to have been intended as a mortgage; and the burden of overthrowing its legal effect rests, as in all cases, on him who seeks to defeat its terms; and neither the terms and conditions of the contemporaneous offer or option contract, nor the incidental facts, circumstances and inferences, show that the absolute deed was intended as a mortgage. Wolff v. Bobb, 148 Mo. 344; Bailey v. Trust Co., 188 Mo. 483.

LAMM, P. J.—Cast on demurrer to his amended bill and refusing to plead over, judgment went against him and plaintiff appeals.

On November 19, 1904, plaintiff brought his suit in equity, the object and general nature of which was to recover damages for the sale of certain real estate in alleged violation of an alleged agreement and for an accounting of rents and profits, etc. It is not necessary to reproduce the bill—a synopsis will serve, viz.:

It is charged that on December 6, 1897, plaintiff, a resident of St. Louis, owned a certain lot in East St. Louis, Illinois, an opera house and the appurtenant fixtures. That on July 13, 1898, the J. T. Donovan Real Estate Co. loaned plaintiff $10,000, and to secure the same took a mortgage "in the ordinary and customary form" on said lot, opera house, furniture and fixtures, which mortgage was duly put of record. That afterwards the mortgage became the property of one Natille Patte. That afterwards it passed by assignment to defendant, a resident of St. Louis, and became his property. That the mortgage debt maturing, afterwards on August 5, 1901, plaintiff and defendant had an accounting on the mortgage and agreed there was due defendant $7,780, principal and interest, on said date, and thereupon they entered into written agreement anent the subject-matter. The bill sets forth, by way of allegation, the supposed terms of this agreement and puts the pleader's construction on the meaning of those terms. But as the agreement is also pleaded, totidem verbis, it will speak for itself, viz.:

"Whereas Joseph T. Donovan, of the city of St. Louis, State of Missouri, is indebted to Adam Boeck, of the same place, in the sum of seven thousand seven hundred and eighty dollars under and by virtue of a certain note, secured by mortgage, dated July 13, 1898, and recorded in the recorder's office of St. Clair county,

Illinois, in book 263, page 588; said Adam Boeck having become the owner of the said note and mortgage, and whereas default has been made by the said Jos. T. Donovan in the payment of the principal note and mortgage and taxes upon the property described in the mortgage, said Jos. T. Donovan has this day conveyed by warranty deed to said Adam Boeck (*in consideration of the cancellation of the said debt of said Jos. T. Donovan to said Adam Boeck in the said sum of seven thousand seven hundred and eighty dollars; and in consideration of an amicable settlement and to avoid a foreclosure suit*) the property known as the 'McCasland Opera House' in the city of East St. Louis, Illinois, described as follows:

"Lots numbered one and two in block one of Pecan Grove Addition to East St. Louis, as per plat recorded in the recorder's office of St. Clair county, in book 'D' on page 108, having a front of sixty feet on Broadway by a depth of one hundred and twenty feet to an alley, together with all the furniture, fixtures, scenery and appurtenances to said opera house belonging.

"And said Adam Boeck shall immediately have the possession of said property and is entitled to all the rents, issues and profits thereof.

"Now, therefore, these presents witnesseth: That the said Adam Boeck, or his legal representatives, upon payment to him or his legal representatives, of the sum of seven thousand seven hundred and eighty dollars, with interest on that sum at the rate of seven per cent per annum from the 5th day of August, 1901, including expense of repairs, taxes and insurance in said property, will reconvey to said Jos. T. Donovan by quitclaim deed, free of any incumbrance thereon (incurred by said Adam Boeck), provided: Said Jos. T. Donovan pays said amount within eighteen months

from August 5, 1901, viz.: on or before February 5, 1903; otherwise this agreement is void.

"*The purpose of this contract and the conveyance of this date to Adam Boeck, is to avoid the expense of foreclosure proceedings to said Jos. T. Donovan, and it is expressly understood between the parties hereto that this instrument shall not be construed to be a mortgage.*

"And it is further agreed that upon the payment by said Jos. T. Donovan to the said Adam Boeck *of the said indebtedness as aforesaid,* at the time and in the manner aforesaid, the said Jos. T. Donovan shall be entitled to an accounting of said Adam Boeck and the payment to him said Jos. T. Donovan of any balance which may be due him from such rents collected.

"This agreement shall be binding upon the heirs, executors, administrators and assigns of the parties hereto.

"In witness whereof the said parties have hereunto set their hands and seals, in duplicate, this 5th day of August, 1901."

It is next alleged that "pursuant to and as an incident to the said agreement" on the same date plaintiff conveyed the property to defendant by a warranty deed, absolute on its face, but which was intended to be and is a mortgage and was for the purpose of holding the legal title until plaintiff could pay the debt; that the consideration in the deed was $7,780, but in fact plaintiff received no consideration for the conveyance—the mentioned consideration being for the balance due on the mortgage debt to the date of conveyance; that defendant at no time released the mortgage or the secured notes and delivered them to plaintiff, but held the same as a lien upon the mortgaged property until said property was sold and conveyed by him to one Arnold as hereinafter stated; that on the date of said conveyance to defendant the

property was of the reasonable market value of $27,-
000; that on the date of the agreement and conveyance
defendant entered into possession of the premises, pro-
ceeded to the execution of the agreement, collected
large amounts of rents, issues and profits, accruing
from the premises, until September 18, 1903, on which
latter date he sold the property to one Arnold by a gen-
eral warranty deed, expressing a consideration of only
$1,000.  That in truth and fact, while the amount is
unknown to plaintiff, yet, on information and belief,
he charges and avers that the amount received from
Arnold was largely in excess of $7,780.  That defend-
ant at all times concealed from plaintiff the amount
received in the sale, and. failed and refused to account
to plaintiff for any sum in excess of $7,780 together
with interest, expenses, repairs, taxes and insurance
upon said property.  That the rents and issues of said
property were equal to or more than sufficient to pay
all accruing interest on said indebtedness, including
expenses of repairs, taxes and insurance prior to the
date of the Arnold sale.  That at the time of the Ar-
nold sale the property was of the reasonable market
value of $27,000.  That the conveyance by defendant
to Arnold was in violation of the agreement between
plaintiff and defendant as aforesaid and that by reason
of such violation plaintiff has been damaged in the
sum of $27,000.

The prayer follows:

"Wherefore and by reason of the premises plain-
tiff prays that defendant be ordered to account to
plaintiff for the reasonable value of said property,
together with all of the rents collected and income
received by him from said property, less any reason-
able and proper expense, taxes, repairs or insurance,
paid out by him in maintaining said property, and
plaintiff prays judgment against the defendant for all
sums of money which may be found due and owing

plaintiff together with interest thereon, and plaintiff prays this court for such other judgments, orders and decrees as may seem to the court just and proper, together with his costs in this behalf expended, and for this he will ever pray.''

The grounds of demurrer are: *First.* That the petition does not state facts sufficient to constitute a cause of action. *Second.* That the contract pleaded in the petition, when read with the warranty deed referred to, is not ambiguous, is an option contract (a conditional sale) and not a mortgage; that the deed and contract control the rights and the intention of the parties without resort to parol evidence or extraneous circumstances, and, properly construed, the petition and contract show that plaintiff has no rights in equity against defendant. *Third.* Because on the face of the petition plaintiff has been guilty of such laches that a court of equity will not entertain his plea. *Fourth.* Because on the face of the petition it appears that plaintiff is not entitled to the relief sought.

Errors are assigned as follows:

''1. The court erred in holding that the contract, together with the deed, created a conditional sale.

''2. The court erred in holding that the contract did not show upon its face that the deed, absolute in form, was by the parties intended as a mortgage.

''3. The court erred in holding that under all the averments of the petition, the deed dated August 5, 1901, absolute upon its face, was not by the contract and the averments in the petition, admitted by the demurrer, intended by the parties as a mortgage.''

Is there soundness in any of these assignments?

I.   The uppermost question here is whether the pleader in his bill or the court in its ruling put a correct construction on the written contract. We say this is so, because it is sound law that, absent a confidential relation, present parties who are *sui juris* and capable of contracting, present a contract made at arm's length, supported by a valid consideration and not obnoxious to good morals or the policy of our laws; absent surprise, mistake, deceit, oppression or any of the protean forms that fraud takes on; and present a written contract somewhat inaccurately drawn, but unambiguous in terms and complete in itself, and which is relied upon by the pleader to the exclusion of any parol agreement (all of which elements are here), then in such condition of things, in last analysis, whether it was error to sustain the demurrer turns upon the judicial construction to be put upon the written contract. The cause is put to us on the theory that by sustaining the demurrer the court construed the contract, when read in connection with the warranty deed of even date, to be a conditional sale and not an equitable mortgage.

II.   It is argued that the demurrer admits the truth of the allegations of the pleading. This is so only in a sense. Parties on demurrer go to trial upon an issue of law, and in order to do so it must be held that the facts remain in abeyance in the background and are taken as true for the purposes of the demurrer. But a demurrer admits only *facts* well pleaded. It does not admit the soundness of conclusions of law in the plea, nor mere conclusions of the pleader on the facts constitutive of the cause of action, nor does it admit the correctness of averments concerning the meaning of a paper pleaded in the bill.

In Dillon v. Barnard (21 Wall. l. c. 437), Mr. Justice FIELD, speaking for the Supreme Court of the

United States, said: "The averments of the bill as to the purport and meaning of the provisions of the indenture, the object of their insertion in the instrument, and the obligations they imposed upon the corporation and the trustees, and the rights they conferred upon the plaintiff when his contract was approved, are not admitted by the demurrer. These are matters of legal inference, conclusions of law upon the construction of the indenture, and are open to contention, a copy of the instrument itself being annexed to the bill, and, therefore, before the court for inspection. A demurrer only admits facts well pleaded; it does not admit matters of inference and argument however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms; nor the correctness of the ascription of a purpose to the parties when not justified by the language used. The several averments of the plaintiff in the bill as to his understanding of his rights, and of the liabilities and duties of others under the contract, can, therefore, exert no influence upon the mind of the court in the disposition of the demurrer. This is not the case of a bill to set aside or reform the contract as not expressing the actual intention of the parties. It is a case where the contention arises solely upon the meaning of the indenture in its bearing upon the contract, and that must be ascertained by applying to its language the ordinary rules of interpretation." To the same effect is Bonnell v. Griswold, 68 N. Y. 294. See Bliss on Code Pleading (3 Ed.), sec. 418.

Therefore, although the pleader in this case averred in his bill that the written contract between Donovan and Boeck meant this, that, or the other thing —for instance, that the warranty deed was an equitable mortgage and not a conditional sale—yet it remains

for the court and not for the pleader in his bill to give the terms of the contract their true meaning. ·

III.  Nor does a demurrer admit the facts in the sense that such admission can be used as an admission of record at other stages of the case—*e. g.,* on a trial on the merits.  It is argued that the demurrer admits the alleged value of the property. From this fact it is argued inferentially that it admits the amount of plaintiff's damages; and, as wide divergence between the amount to be paid for the property and its true value is secondarily of some force in determining whether the contract is a conditional sale or a mortgage, the point is of some significance. On it, we observe that while it is not necessary in this case to hold that the demurrer does not, for its own purpose, admit the amount of damages alleged in the bill arising from the alleged violation of the written agreement by the sale to Arnold, yet we express a doubt on the proposition under the provisions of sections 774-5-6, Revised Statutes 1899.  Those sections seem to contemplate that if judgment be rendered on demurrer, on an issue at law, where the damages cannot be ascertained by the written instrument sued on, but remains unliquidated (as here), inquiry should be had on the amount of the damages. The reasoning of this court in Darrah v. Steamboat Lightfoot, 15 Mo. 187, would seem to point that way. See also McKinzie v. Mathews, 59 Mo. 99.

But, conceding to the appellant (without deciding) that the demurrer admits the value of the property and inferentially admits the amount of the damages as alleged in the bill, yet that concession is not determinative of the issue at law raised by the demurrer. It is an element to be considered for what it is worth, but is not a decisive one.  The point goes to the inadequacy of the consideration.  Gross inadequacy of consideration may afford grounds of equitable relief;

therefore, inadequacy of consideration becomes an element to be considered in determining whether a contract evidences a conditional sale or a mere security. In applying that particular doctrine to the case at bar, it is proper to observe that the bill does not allege the amount of back or accrued taxes; it does not allege the condition of repair the property was in or the amount of outlays necessary to put and keep it in repair and preserve it. These elements become part of the consideration and are to be considered on the question of its inadequacy. So that, as said, the inadequacy of consideration, if taken as admitted on demurrer, must be judged of in connection with the vagueness of the bill in the particulars enumerated.

Again, if the bill counted on fraud, or on the existence of such confidential relation as would elicit the lively concern of a court of conscience, or if it sought to reform the instrument by supplying a term or terms of the contract omitted by mutual mistake or inadvertence, then the matter might stand on another foot; or if the written contract was plainly ambiguous in its terms a different case might be here. In such latter case, in interpreting ambiguities the court would benignly lean towards the construction of a mortgage, if a fair resolving of such ambiguities could be made in favor of that view (See authorities, *infra*). Now, the language of the contract is somewhat inaccurate but, as presently seen, it is not ambiguous. As pointed by Scott, J., in Riggs v. Myers (20 Mo. 239): "There is a distinction between an inaccuracy and an ambiguity of language. Language may be inaccurate without being ambiguous, and it may be ambiguous though perfectly accurate. . . . . The language may be inaccurate, but if the court can determine the meaning of this inaccurate language, without any other guide than a knowledge of the simple facts upon which, from the nature of language in general, its meaning depends, the language, though inaccurate, could not be ambig-

uous." The foregoing just observations of Judge
SCOTT are applicable to the contract in suit.

Confining our attention to the contract itself, we
come to the main question, *viz:* Did the chancellor
rightly construe it to be a conditional sale?

IV. In determining the question of whether a
given contract is one of conditional sale or one of
mortgage, courts in given cases have adopted and ap-
plied sundry rules having more or less play in decid-
ing the point. These rules abound in nice distinctions
and those distinctions are discussed in briefs of learn-
ed counsel in the case at bar with elaborate diligence.
But one main rule is common to the construction of all
contracts and to it all others must give way. That
rule is to get at the meaning of the contract and en-
force its true intendment as judicially gathered from
all its four corners. To this end it is elementary that
the subject-matter of the contract, the relations of the
parties to that subject-matter and the ordinary mean-
ing of the language used in the contract, pass in re-
view.

Another main rule is that a mortgage cannot
spring up without an existing debt, enforceable at law,
to which the mortgage becomes a security. Under this
rule the debt must first be sought out as substance,
the tree trunk, the mortgage becomes an incident to
that substance, the shadow to that trunk. There must,
then, be found the relation of debtor and creditor be-
fore there can be found a mortgage in contemplation
of law. So that, to the maxim, once a mortgage always
a mortgage, there must be added another, *viz.*, no
debt, no mortgage. [Conway's Executors v. Alexan-
der, 7 Cranch 218; Desloge v. Ranger, 7 Mo. 327; Slow-
ey v. McMurray, 27 Mo. 113; Turner v. Kerr, 44 Mo.
429; Bobb v. Wolff, 148 Mo. 335; Dunaway v. Day, 163
Mo. 415; Bailey v. St. Louis Union Trust Co., 188 Mo.
486; Powell v. Crow, 204 Mo. 481.]

Testing this contract by the two main rules laid down, it would seem to be made clear beyond reasonable doubt that it evidenced a conditional sale and not a mortgage. This is so, because:

(a) Putting ourselves in the shoes of Donovan and Boeck and looking at the matter through their eyes, it appears that at one time Boeck had Donovan's live note for borrowed money. He could have sued on that note and enforced its collection by judgment and *fi. fa.* independently of the mortgage. But the contract changed all that. This subsisting debt was canceled by its express terms, and if Boeck had sued on that note after the execution of that contract, the contract might have been pleaded in bar of the suit, unless we wholly read out of the contract its provision to the effect that the consideration supporting it is the cancellation of the mortgage debt of $7,780, and the provision that a further consideration is an amicable settlement and the avoidance of a foreclosure suit. With these provisions in the contract, what debt was due and owing from Donovan to Boeck which the latter could have enforced at law? To construe the original debt as still existing would certainly be a harsh construction of the contract against the debtor, and one no court should make unless constrained thereto by the spelling of the whole instrument. True the bill alleges the debt was not in fact canceled, but that the note was held by Boeck as a live note and the mortgage lien as a live lien. But that allegation is evidently merely the construction of the pleader put upon the written contract and is not admitted by the demurrer. The court below did not construe it that way, neither do we.

The bill alleges that the mortgage was not satisfied on the record until the Arnold sale, and that Boeck retained possession of the note and mortgage. The possession of the securities is an incident but not a controlling one in determining the issue of law raised

by the demurrer of mortgage or no mortgage. It
might have been controlling in the absence of the ex-
press provisions of the contract that the debt was can-
celed; but we know of no rule of law to the effect that
a written agreement between the debtor and creditor,
supported by a valid consideration, may not provide
for, and result in, the cancellation of a debt, although
the evidence of the original debt may thereafter in fact
remain in the possession of the creditor. In this case
the bill does not show whether Boeck or Donovan held
possession of the written contract. Presumably Dono-
van had the possession since it was for his benefit. As
the amount to be paid for the repurchase was the
exact amount of the canceled note, it is not unreason-
able to suppose that, while Donovan held the contract,
Boeck held the note and mortgage as *data* evidencing
the amount Donovan was to pay him for a retransfer
of the property if the latter sought to enforce the
contract.

(b)   Under the allegations of the bill, Boeck at
one time held a perfect mortgage security in the usual
form.   Whether that mortgage provided for a sale
without foreclosure suit, or whether the statutes of
Illinois allow a sale without foreclosure suit, we are
not informed.   Presumably, however, there is a well-
beaten path in the jurisprudence of Illinois for fore-
closures of mortgages by an ordinary bill in court, or
out by a public sale, and that path was open to Boeck at
one time. Under the scant and vague allegations of this
bill there is nothing by which it can be inferred by a
most liberal construction of the contract, that Boeck
intended to or did surrender his perfect mortgage, and
in lieu of it took a contract raising an equitable mort-
gage with its attending shadows and uncertainties;
and, cancelling a plain promissory note, a direct and
express promise to pay a loan of money, took in lieu
thereof a mere implied promise to pay a debt, as ap-
pellant says the contract means.   Men do not usually

act that way.  Mortgagees, of all men, are not prone
to exchange the certain and fast for the unknown and
loose, the express promise for an implied one.   The
fable of the dog letting go his dinner of meat in mouth
to grasp its shadow in the water is in point.

The case at bar is within the doctrine of the cases
cited *supra*.   Among them Bailey v. St. Louis Trust
Co. is on all fours in its essential features.   One of the
syllabi of that case correctly formulates the gist of it
and reads: "Where the mortgagor by quitclaim deed,
absolute on its face, conveys property to the mortga-
gee and enters into a concurrent agreement to recon-
vey on condition, and there is nothing, either in the
deed or in the concurrent agreement or in the circum-
stances, to indicate that the deed was given as a mere
security for the debt, it will not be held to be such.  And
the fact that the mortgagee at the time had a deed of
trust on the property to secure his debt would indicate
that he would not have exchanged this better form of
security for such an equitable mortgage, but that the
quitclaim was made to prevent a foreclosure sale under
that better security."

It is argued that the contract uses the phrase,
"indebtedness as aforesaid," and therefore an indebt-
edness is recognized as existing; but will it do to
leaven the whole lump of the contract with that small
particle of leaven and reconstruct the whole contract
around that single phrase (one of wide meaning, and
taking on color from its context), in the teeth of other
provisions reciting that the mortgage debt is canceled?
The contractual phrase, "indebtedness as aforesaid,"
follows other provisions relating to the amount to be
paid by Donovan for a reconveyance.   It is fairly
susceptible to the interpretation that it was intended
to earmark that amount, rather than to the interpreta-
tion of being a recognition of a subsisting enforceable
original debt in a technical sense.  In other words, con-
struing the phrase by its context, the company it

keeps, we think it should be held to mean that in case of a repurchase under the terms of the contract, the obligation to pay, to-wit, the "indebtedness," is in the sum of $7,780, plus taxes, insurance and repairs, less the rents accruing.

There is another clause in the contract to be reckoned with, *viz.*, the provision that: "It is expressly understood between the parties hereto that this instrument shall not be construed as a mortgage." Of this clause it may be observed that if, in giving effect to its real legal intendment, the contract appears to be a mortgage, then that legal intendment would not be evaded or emasculated by the insertion of a provision that the contract was no mortgage. The piercing eye of the chancellor would look through the thin shell of such hoodwinking phrase and see the kernel of the thing itself. But we are cited to no case holding that parties may not interpret their own contracts by provisions to that effect; and we know of no principle of law or equity that is impinged upon by such contractual interpretation, if occasion exists for its use. Take the case at bar. Here was a creditor and a debtor, a mortgagor and a mortgagee. For the benefit of the debtor they are about to change their relations and enter into a new contract. The draftsman presumably knew that whether a contract evidencing that new relationship became a mortgage or an absolute conveyance with a conditional right to repurchase, taken back by the debtor, was a question of concern narrowly watched by a court of conscience. What more natural under those circumstances than that the matter was talked over and that (to clear up all doubt, out of abundance of caution) it should be agreed that the contract should not be construed as a mortgage? If part of their contract was to the effect that their new deal should not constitute a mortgage, why may the contract not say so? No court would permit itself to be swayed by such a provision in a contract if it once

became apparent that its use was a cunning contrivance to defeat the object and intendment of the whole instrument, or if its appearance in the instrument was obviously referable to surprise, accident or a fraudulent design to catch an ignorant or unwary party on the hip. But, as said, there are no such allegations here, and we are of the opinion that some effect must be given to that provision of the contract.

On the whole case the chancellor did not err in construing the written contract to be a conditional sale and not a mortgage. When we stamp that interpretation on it, the mere conclusions of the pleader to the contrary become of no account on demurrer.

V. It is argued by respondent that the bill on its face shows such laches as would defeat an accounting upon the theory that the contract evidenced a conditional sale and not a mortgage. The bill shows that Donovan was to pay Boeck the purchase price on or before February 5, 1903. The suit was instituted November 19, 1904—a year and two-thirds after the option ran out. There is no averment that prior to that date, or prior to suit, the purchase money was tendered and an accounting demanded or any steps towards performance taken by Donovan. Respondent's learned counsel further argue that the contract being an optional contract, time is of its essence, that one who seeks to enforce an option for the purchase of real estate must by his bill show himself prompt, eager and desirous of performing; that laches need not be pleaded by answer but may be invoked as a conclusion of law on the averments of the bill as well as on facts established by evidence. [Stevenson v. Smith, 189 Mo. l. c. 466.] We are cited to an array of authorities holding that time is of the essence of an option contract and that prompt performance must be tendered, or legally excused; for example, 4 Kent, Comm., p. 144; Mason v. Payne, 47 Mo. 517; Glass v. Rowe, 103

Mo. 513; Hollmann v. Conlon, 143 Mo. 369; Davis v. Petty, 147 Mo. 374; Green v. Covillaud, 10 Cal. 317; Dunaway v. Day, 163 Mo. 415. But we deem the propositions stated and the authorities cited as afield; because. the bill does not count on the theory of a conditional sale. Therefore the question of laches on the part of the plaintiff who makes no averments of tender and performance of a conditional sale and pleads no excuse whatever for non-performance, however pertinent in a proper case, is in the air in the case at bar.

We conclude the judgment should be affirmed. It is so ordered. All concur.