William E. MILLER, Appellant,

v.

KAMO ELECTRIC COOPERATIVE, INC., Respondent.

Earl C. MILLER and wife, Stella A. Miller, Appellants,

v.

KAMO ELECTRIC COOPERATIVE, INC., Respondent.

Nos. 23279, 23280.

Kansas City Court of Appeals.

Missouri.

Nov. 6, 1961.

Rehearing Denied Feb. 12, 1962.

See 351 S.W.2d 960.

George T. Sweitzer, Jr., Harrisonville, Gayles R. Pine, Pine & Welling, Warrensburg, for appellants.

Jack L. Rorschach, Vinita, Okl., John C. Milholland, A. J. Anderson, Harrisonville, for respondent.

CROSS, Judge.

This appeal includes two cases which were consolidated by the circuit court and tried together. Plaintiffs-appellants are Missouri landowners. Defendant-respondent is an Oklahoma cooperative corporation engaged in the transmission and distribution of electric power. Plaintiffs sue upon written contracts granting defendant transmission line easements across their respective properties, claiming damages to their real estate. Plaintiffs appeal from directed verdicts and judgments entered in favor of defendant.

Plaintiffs' petitions allege that defendant purchased and plaintiffs sold transmission line easements across and over their real estate; that defendant constructed an electric power transmission line over and along the easements granted; that under the terms of the easement contracts, defendant agreed to pay plaintiffs-grantors, in addition to the recited consideration for the easements, damages to the real estate arising out of the initial construction of the line; that defendant in constructing the line caused damage to plaintiffs' real estate; and, that defendant upon demand has refused to pay said damages.

At the trial plaintiffs introduced copies of the easement contracts and some photographs taken on the farms and undertook to present testimony to show that defendant damaged the lands by cutting standing timber from them. Defendant objected to that line of testimony in the following language: "We object to that as not a part of the issues in this case; that was provided for in the easement". The court ruled: "I am going to sustain the objection as to tree damage". Plaintiffs then made a formal and lengthy offer to prove (among other things) that defendant cut timber from their farms and to show the extent, nature and value of the timber cut. The offer was refused by the court. Plaintiffs then, "in view of the court's ruling", declined to offer further proof. Whereupon, the court entered the judgments in favor of defendant.

This appeal is prosecuted by plaintiffs essentially on the complaint that the trial court erred in refusing to permit them to continue in their presentation of evidence that defendant had cut timber from their lands, as the basis of their demands under the contracts for payment of actual damages to their real estate. Our disposition of the complaint turns on the determination of a single basic question—whether, under the terms of the easement contracts, defendant is liable to plaintiffs for actual damages caused by cutting timber from their real estate.

Thus, the contracts are before this court to be read for their meaning. Plaintiffs, and defendant as well, urge that the instruments are clear and contain no ambiguity. Plaintiffs insist that the contracts granted defendant only the right and privilege to do certain future acts—to enter upon the lands, to select a location and there build a transmission line; that the contracts obligated defendant to pay plaintiffs damages to their real estate caused by and determinable only after the performance of those acts. Defendant argues that in making the contracts all future damages had been foreseen by the parties, were negotiated upon, and compensated by the payment of the named contract consideration.

Three easement contracts appear in evidence. Two of them were executed by

plaintiff William E. Miller with reference to two separate tracts owned by him. The third contract was executed by plaintiffs Earl C. Miller and wife. Each of the contracts recites two separate items of consideration for the initial grant of easement rights: (1) a nominal sum of $20, paid in hand, and (2) contingently, at a future date, an additional amount "per pole" and "per anchor". The documents are identical except as to their designation of grantors, land descriptions and the "pole" and "anchor" consideration, and contain pertinent provisions as follows:

"Transmission Line Easement

"The Grantor—(named)—for and in consideration of the sum of Twenty Dollars ($20.00)—hereby grants, bargains, sells and conveys to said Kamo Electric Cooperative, Incorporated, * * * the perpetual easement and right to enter upon the lands of Grantor * * * (described) * * * and to erect, operate, survey, maintain, repair, rebuild and patrol on or over said lands * * * one or more electric power transmission lines and appurtenant signal lines, telephone and telegraph wires, poles, towers, wires, cables, anchors, guy wires, and appliances necessary in connection therewith * * * together with the right of ingress and egress to, from and over said lands for doing anything necessary or useful to the enjoyment of the easement herein granted. There is also granted to the Cooperative the perpetual right to cut all trees and to remove all other obstacles of such height that could fall within a distance of 5 feet of the outer conductor of the transmission line and facilities of the Cooperative, and to clear all brush, timber, structures, improvements, and fire hazards, located within fifty (50) feet of the center line of said electric power transmission lines, provided, however, the words "fire hazard" shall not be interpreted to include growing crops and fences.

"To have and to hold said easement and rights unto the Cooperative and its lessees, licensees, successors and assigns, forever.

"The Cooperative, in addition to the consideration hereinbefore stated, agrees to pay to Grantor for the privileges herein granted, when the above line or system has been constructed on the above described property, as follows: $——— per pole; $——— per anchor.

"In addition to the recited consideration the Cooperative agrees to pay to the Grantor the actual damages to Grantor's real property, including damage to growing crops, arising out of initial construction of said lines; and to pay thereafter actual damages to growing crops occasioned by operation and maintenance of said lines.

"The Cooperative further agrees that trees that are felled shall be cut in commercial wood lengths, but not less than eight (8) feet, and left on the edge of but off the area authorized to be cleared."

In the two contracts signed by William E. Miller, the "additional" compensation was specified at "$10.00 per pole; $10.00 per anchor". The contract signed by Earl C. Miller and wife stated the "additional" compensation in a lump sum as follows: "$480.00 for all poles placed on the above described property. No anchors".

■ This court joins the parties in their expressed views that the easement agreements are not ambiguous. We think the meaning of those contracts is apparent from the language employed. In our interpretation, the words and phrases of the documents will be taken in their ordinary sense. The mutual intentions of the parties will be ascertained from the language of the contracts and the facts and circumstances

attending their making. As stated in Donovan v. Boeck, Mo.Sup., 217 Mo. 70, 116 S. W. 543, 547: "But one main rule is common to the construction of all contracts, and to it all others must give way. That rule is to get at the meaning of the contract and enforce its true intendment as judicially gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter, and the ordinary meaning of the language used in the contract, pass in review".

Before analyzing these contracts, we direct attention to a Missouri Supreme Court decision which stands as controlling authority on the present issue—Fulkerson et ux. v. Great Lakes Pipe Line Co., 335 Mo. 1058, 75 S.W.2d 844, 845. In that case the court determined the meaning and effect of a contract granting a pipe line easement over the plaintiff's farm. Pertinent portions of that easement instrument are as follows:

"For and in consideration of the sum of One Dollar ($1.00) to us in hand paid by Great Lakes Pipe Line Company, a corporation, of Ponca City, Oklahoma, the receipt of which is hereby acknowledged, H. C. Fulkerson and Ida L. Fulkerson, his wife, does hereby grant to Great Lakes Pipe Line Company, its successors or assigns, the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through certain lands [described] * *.

\* \* \* \* \* \*

"All damages to crops, surfaces, fences, and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include main-tenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of 50 cents per rod * * * or fraction thereof of land on these premises, across which said line is laid. * * *"

Of the Fulkerson contract the court said:

"The easement, 'the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines,' is expressly granted in the first paragraph of the contract. True, the consideration there named is nominal, $1. In the fourth paragraph a further consideration of 50 cents per rod of line laid is provided. That is an actual consideration and is to be paid regardless of whether damage results or not. Thus by the terms of the contract the grant of the easement if used is compensated apart from any damage that may result to the land and its appurtenances from acts done in the exercise of the right granted. But the parties contemplated that in doing the things which the contract granted defendant the right to do the latter might damage plaintiffs, and they provided that plaintiffs should be compensated for such damage. The damage there provided to be paid is not for or because of the granting or the existence of the easement or the *right* to go upon the land and lay, maintain, operate, re-lay and remove pipe lines, but for and because of the *laying* of each line of pipe".

■ Having examined the contracts in these cases in the light of the Fulkerson opinion and under applied judicial rules, we reach the conclusions herein expressed. The first paragraph is an express grant of an "easement", but not a specific right-of-way. It grants certain privileges defined as the right (1) to enter upon the lands; (2) to erect transmission lines; (3) to ingress and egress from the lands; (4) to remove certain objects, including trees and timber, from the way of the transmission

lines. Although not expressed, there is a clearly implied grant of the right to select a location for a 100 foot way upon which to build transmission lines—limited only by the boundaries of the land (and, perhaps, the rule of reason). We consider those rights as in the nature of a license or an enabling franchise, conferring upon the corporation the legal privilege to perform physical acts on the real estate in the future. Those privileges and rights were purchased from plaintiffs for the consideration of $20 per farm, paid in hand, and a promise to pay an additional sum amounting to $10 per pole and anchor—in the future—as provided by paragraph two. That consideration, in our opinion, paid for nothing other than the enumerated inchoate privileges. As said in the Fulkerson case, "that is an actual consideration and is to be paid regardless of whether damage results or not. Thus by the terms of the contract the grant of the easement if used is compensated apart from any damage that may result to the land and appurtenances from acts done in the exercise of the right granted;".

Plaintiffs' entitlement to compensation for "actual damages to their real property" is provided by paragraph four. We think the language there used is susceptible of no other meaning than that defendant covenants to pay for any actual damage it does to the realty by its acts done in constructing the transmission line. Again, as said in Fulkerson, "But the parties contemplated that in doing the things which the contract granted defendant the right to do the latter might damage plaintiffs, and they provided that plaintiffs should be compensated for such damage. The damage there provided to be paid is not for or because of the granting or the existence of the easement or the *right* to go upon the land and lay * * pipe lines, but for and because of the *laying* of each line of pipe".

Aside from the language of the contract and the compulsive effect of the Fulkerson case, the facts and circumstances of the transactions are strongly persuasive that the parties did not intend or agree that all future damages were compensated in full by the payment of the nominal sum of $20 and $10 per pole and anchor.

■ Where a contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally make, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair or improbable contract. Big Muddy Coal & Iron Co. v. St. Louis-Carterville Coal Co., Mo.App., 176 Mo.App. 407, 158 S.W. 420.

We think it can be reasonably assumed that plaintiffs intended to exact and be paid adequate compensation for damages inflicted upon their lands, as was their legal right. When they granted the easements and were paid the sum of $20, they knew nothing of the nature and extent of the damages they were to suffer at some future time—except the likelihood of occurrence. Defendant had not yet selected the location of its transmission line. The entire areas of plaintiffs' farms were subjected to the easements. Defendant had unlimited choice, within the boundaries of those farms, of a way on which to construct its transmission lines. The contracts permitted defendant to enter each farm at any place and to locate and build its line along any route that it might select. Obviously, the potential of inflicting damages could vary in great degree, depending primarily upon the particular location chosen by defendant for its purposes. Within the boundaries of those farms are located houses, barns, outbuildings, fences, trees, growing crops, and the other usual farm appurtenances. It is patent that the physical location of a site for defendant's transmission line would be a factor of great significance in the causation of damages to plaintiffs. Other considerations—such as the total length of the way selected, the time and manner of construction, weather conditions and the

occurrence of casualty—were unknown to and unforeseeable by the parties at the time they made the contracts. Taking all of these matters into consideration, we believe it was not possible that the parties could have understandingly foreseen, negotiated and settled defendant's liability for future damages to plaintiffs' lands. There could have been no meeting of the minds on that subject. The contract interpretation that defendant pleads for is irrational and improbable. Prudent and reasonable men are not likely to have entered into a contract on those terms.

 Defendant presents an additional point. It is urged that the trial court's refusal of plaintiffs' offer of proof was a correct ruling and did not constitute error. Defendant argues that since the offer went beyond the scope of the issues (the cutting of timber and resulting damages) and included other subject matter which was incompetent and immaterial, the court was not required to sort out and rule upon the material and proper evidence, but was at liberty to reject the entire offer. Hence, defendant suggests, there is no basis of error to support the appeal. The point is without merit. It was not necessary for plaintiffs to make the offer of proof, after the trial court had sustained defendant's objection to the introduction of further evidence relative to the cutting of timber, in order to preserve their complaint of error. "Further, an offer of proof is not necessary, in order to preserve an objection to a ruling of exclusion for review, where the offer of proof would be a useless gesture by virtue of the attitude of the trial court, or where the court has ruled broadly that evidence of a particular class or type, or evidence in support of the theory or fact which the party is seeking to establish, is inadmissible". 4 C.J.S. Appeal and Error § 291, pp. 900–901. Also, see Murphy v. Reed, Mo.App., 193 S.W.2d 947.

This decision establishes plaintiffs' legal entitlement, under the contracts, to be compensated for any actual damages to their real property, including damage to growing crops, arising out of the construction of defendant's transmission line. It is plaintiffs' further right to have a trial at which they may introduce appropriate evidence of such damages and submit that issue to a jury. We rule that the issue of plaintiffs' damages to their real estate shall include any damages occasioned by the cutting of trees or timber, but is not so limited. See Fulkerson et ux. v. Great Lakes Pipe Line Company, supra.

Accordingly, the judgments are reversed and the cases remanded for a new trial.

All concur.