Terry WILLIAMS, pro ami, Plaintiff-Appellant,

v.

Janice M. CHRISTIAN (Tinder), Defendant-Respondent.

No. KCD 26218.

Missouri Court of Appeals, Kansas City District.

Dec. 2, 1974.

Motion for Rehearing and/or Transfer Denied Jan. 28, 1975.

Application to Transfer Denied April 14, 1975.

M. Sperry Hickman, Inc., By M. Sperry Hickman, Independence, for plaintiff-appellant.

George T. O'Laughlin, William E. Simmons, Miller & O'Laughlin, P. C., Kansas City, for defendant-respondent.

Before PRITCHARD, P. J., SWOFFORD and SOMERVILLE, JJ., and TURNAGE, Special Judge.

SOMERVILLE, Judge.

The refusal of a lookout instruction has generated a head on confrontation between the parties in a tort action. The appellant, plaintiff below, tendered the following lookout instruction as his verdict director, which was refused by the trial court:

"REFUSED INSTRUCTION NO. A

Your verdict must be for plaintiff if you believe:

First, defendant failed to keep a careful lookout, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence the plaintiff sustained damage.

The term 'negligence' as used in this instruction means the failure to use the highest degree of care which means that degree of care that a very careful and prudent person would use under the same or similar circumstances."

In lieu thereof, and over the objection of appellant, the trial court gave the following res ipsa verdict director on which the case was submitted to the jury:

"INSTRUCTION NO. 3

Your verdict must be for plaintiff if you believe:

First, defendant was the driver of the automobile, and

Second, the automobile left the street and ran across the shoulder, and

Third, such movement of the automobile was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence the plaintiff sustained damage.

The term 'negligence' as used in this instruction means the failure to use the highest degree of care which means that degree of care that a very careful and prudent person would use under the same or similar circumstances."

The jury returned a verdict for respondent, defendant below. For reasons hereinafter discussed, appellant contends the trial court's refusal to give the tendered lookout instruction was untenable and so prejudicial as to entitle him to a new trial —on the other hand, the respondent contends the trial court's refusal to give the tendered lookout instruction was tenable and the verdict returned in her favor is inviolable.

■ Extrinsic to the merits, but nonetheless demanding disposition, is respondent's motion to dismiss the appeal, which was taken with the case, for failure of appellant's brief to contain a proper statement of facts [Rule 84.04(c), V.A.M.R.] and a proper statement of points relied on [Rule 84.04(e)]. Appellant's brief, in the respects attacked by respondent, is neither a model of compliance nor as wanting as claimed by respondent. Such being the case, this court is unwilling to say appellant's brief is so deficient that he should be expatriated from having his appeal disposed of on its merits. Accordingly, respondent's motion to dismiss the appeal is overruled and attention now focuses on the merits of the appeal.

By way of a brief preface, appellant, who was ten years of age on April 7, 1969, submitted evidence that on the date mentioned, while standing on the south shoulder and clear of the traveled portion of Truman Road in Independence, Missouri, he was struck and injured by an eastbound automobile driven by respondent. Respondent submitted evidence that appellant darted into the street in front of her and was struck while in the traveled portion of Truman Road. Thus, the point of impact was in sharp dispute and intrinsically involved in the controversy swirling around the refused lookout instruction. Appellant, as disclosed by his second amended petition, pleaded that he was struck and injured by respondent's vehicle while standing on the shoulder and clear of the traveled portion of Truman Road as a direct and proximate result of respondent's negligent failure to keep a careful lookout. Respondent's responsive pleading consisted of a general denial.

Appellant claims the trial court erred in refusing the lookout instruction tendered by him because, (1) he was entitled to submit his case and to have the jury instructed on his theory of recovery, e. g., that he was struck by respondent's automobile and injured as a direct and proximate result of respondent's failure to keep a careful look-out, since it was fully supported by the evidence, and (2) the verdict directing lookout instruction, which the court refused, followed to the letter MAI 17.01, 17.05, and 11.03 and was thereby legally correct and properly submitted his theory of the case, the single negligent act of failure on the part of respondent to keep a careful lookout. Respondent joins issue with appellant's assertions of error on the premise that the refused lookout instruction was not legally correct because it failed to contain an hypothesis "of the ultimate fact issue" of whether the impact occurred while appellant was standing on the shoulder and clear of the traveled portion of Truman Road, as supported by appellant's evidence, or in the traveled portion of Truman Road, as supported by respondent's evidence. Additionally, respondent throws in a "so what" or harmless error argument. The latter being premised on the theory that the res ipsa verdict director given by the court, over the objection of appellant, correctly stated the law applicable to his evidence and was more favorable to him than the refused lookout instruction. The contentions of appellant and the counter-contentions of respondent will be discussed along with appropriate legal templates which shape them for proper disposition.

■■ It is axiomatic that appellant was entitled to a verdict directing instruction predicated on respondent's failure to keep a careful lookout, his theory of the case, if supported by the evidence. Welch v. Sheley, 443 S.W.2d 110 (Mo.1969); and See v. Kelly, 363 S.W.2d 213 (Mo.App.1962). Appellate determination of whether the evidence supported giving such an instruction requires viewing the evidence and all reasonable inferences to be drawn from a standpoint most favorable to appellant, giving him the benefit of any part of respondent's evidence favorable to him which was not contradicted by his own evidence or contradicted by his theory of the case, and disregarding all of respondent's unfavorable evidence. Heberer v. Duncan, 449 S.W.2d 561, 563 (Mo. banc 1970); Ukman v.

Hoover Motor Express Co., 269 S.W.2d 35, 37 (Mo.1954) ; and Basler v. Huck, 435 S. W.2d 742, 743 (Mo.App.1968).

The evidence in this case, viewed as above stated, lends itself to the following summarization. Appellant, who was ten years old at the time of the accident, lived on the north side of Truman Road. The family mailbox was on the south shoulder of Truman Road. Appellant, at the request of his father, crossed Truman Road and went to the mailbox to pick up the family mail. After removing the mail from the box, appellant walked north, back toward Truman Road, and stopped at a point "one to one and a half steps" south of the south edge of the traveled portion of Truman Road. The point where appellant stopped and was standing was immediately adjacent to a "mudhole". At this point appellant looked west and observed respondent's vehicle traveling east on the traveled portion of Truman Road at a speed of approximately 25 miles per hour and "decided to wait for it to pass". Respondent's vehicle, when so observed by appellant, was in the vicinity of the intersection of Turner Street and Truman Road. The referred to intersection was approximately two houses west of where appellant was standing. The view from where appellant was standing back west down Truman Road was completely unobstructed for a distance of approximately 1724 feet and Truman Road was straight and level through the entire span of distance just mentioned. After appellant observed respondent's vehicle traveling east on the traveled portion of Truman Road as described, and while still standing at a point "one to one and a half steps" south of the south edge of the traveled portion of Truman Road, he then looked to the east down Truman Road. Sometime during the period of time while appellant was looking east down Truman Road, and while still standing at a point "one to one and a half steps" south of the south edge of the traveled portion of Truman Road, the course and direction that respondent's

vehicle had been traveling when first observed by appellant changed, and it then came partially onto the south shoulder of Truman Road and struck appellant where he was standing. Respondent did not see appellant before the impact occurred. Respondent's vehicle was in good mechanical condition and did not leave the traveled portion of Truman Road due to any mechanical defect, or because it was out of control, or faced with a sudden emergency. After the impact the respondent's vehicle came to a stop approximately 100 feet east of the mailbox, headed in a northeasterly direction, with its front left corner sitting on about the centerline of Truman Road. Appellant was lying in front of respondent's vehicle in the south half of Truman Road. There was a single mud tire track running from the right wheels of respondent's car back southwesterly to the mudhole which was immediately adjacent to where appellant had been standing and there was fresh mud on the right front tire of respondent's vehicle.

■ Did the evidence, so viewed, support the giving of a verdict directing instruction premised on failure to keep a careful lookout? The answer to the posed question is yes for the following reasons. Respondent had a duty to keep a lookout ahead and laterally ahead and to have seen appellant standing on the south shoulder within her unobstructed range of vision. Williams v. Ricklemann, 292 S.W. 2d 276 (Mo.1956) ; and Harris v. Lane, 379 S.W.2d 635 [1] (Mo.App.1964). The majority of cases constituting the main body of the law in this state regarding failure to keep a careful lookout as actionable negligence deal with fact situations where the person or vehicle struck is ahead of or intersecting the path of an oncoming vehicle. In that type of fact situation, *time, distance*, means, and ability are of crucial importance because submissibility requires evidentiary support showing that the party charged with failure to keep a careful lookout could have acted in some manner so as to have avoided the resultant

accident. Such evidentiary support is essential to show that the negligent failure to keep a careful lookout constituted the proximate cause of the complained of accident. Proof of failure to keep a careful lookout, standing alone, is not enough. It must be coupled with supporting evidence from which the trier of facts may reasonably find that such failure constituted the proximate cause of the accident. Miller v. St. Louis Public Service Company, 389 S.W.2d 769, 772 (Mo.1965); and Lovelace v. Reed, 486 S.W.2d 417, 419 (Mo.1972). As previously noted, the majority of the cases constituting the main body of the law in this state regarding failure to keep a careful lookout as actionable negligence have dealt with fact situations where the distance between the injured party and the alleged tort-feasor was an indispensible evidentiary fact in order for the trier of facts to determine whether the alleged tort-feasor had the time, means, and ability to have avoided the ensuing accident, thereby constituting failure to keep a careful lookout as the proximate cause. If respondent's version of the facts be correct that appellant ran out into the street in front of her, then it would have been incumbent on appellant to have had supporting evidence as to the distance between himself and respondent's oncoming vehicle when respondent, in the exercise of the highest degree of care, could have seen appellant do so. Respondent, as borne out by the record, correctly argues that such distance was never shown. Even so, this does not terminate further inquiry regarding whether appellant made a submissible lookout case. Termination of further inquiry at this point would constitute nothing more than seizing upon the simple expedient of ignoring both appellant's theory of the case and his version of the facts. Appellant maintains that he was standing in a position of safety on the south shoulder, and that respondent, after she could have seen him in the exercise of the highest degree of care, changed the course and direction of her vehicle so as to cause it to go partially onto the south shoulder and strike him. As heretofore demonstrated, appellant's version of the facts was amply supported by the evidence. Although it is true that there is no evidence in the record as to the distance between appellant and respondent's vehicle when she changed its course and direction, there is evidence that when appellant first saw respondent's oncoming vehicle, and prior to the impact, it was approximately two houses west of where appellant was standing clear of the traveled portion of Truman Road, and at which time respondent's oncoming vehicle was headed east and was entirely on the traveled portion of Truman Road. This presents a fact situation regarding failure to keep a careful lookout not encompassed in the majority of cases constituting the main body of the law heretofore mentioned, but which, nevertheless, occupies a well recognized niche in the same overall body of law. The distinction between the two fact situations is vividly demonstrated by McWilliams v. Wright, 460 S.W.2d 699 (Mo.1970). In *McWilliams* the alleged tort-feasor contended that the injured party had failed to make a submissible lookout case because there was no evidence that he "in the exercise of the highest degree of care could have seen the danger of harm" to the injured party "soon enough to have taken effective precautionary action." Briefly, the facts in *McWilliams* were as follows: The injured party was riding as a passenger on a motorcycle operated by the alleged tort-feasor, which was proceeding east, with its headlights burning, on a two-lane street at nighttime; the motorcycle collided with an oncoming westbound motor vehicle, whose headlights were on, and which at all times was on its side of the two-lane street; the alleged tort-feasor, "immediately prior to the impact", suddenly swerved the motorcycle to his left and into the westbound car; the alleged tort-feasor testified that he did not see the oncoming car "until immediately before the impact", although he had an unobstructed view of it for some distance prior to the time he suddenly swerved his motorcycle to the left; there was no evidence in the record as to the distance between the motorcycle and the oncoming car when the al-

leged tort-feasor suddenly swerved the motorcycle to the left and into the car. The court in *McWilliams*, 1.c. 702, quite properly held that the injured party made a submissible lookout case against the operator of the motorcycle:

"Effective precautionary action in such a case would have been merely to have stayed in his proper lane of travel, and to have refrained from turning left. Causation is obvious: But for the failure of defendant Wright to maintain a vigilant lookout no accident in fact would have occurred, assuming these facts to be true."

There is a controlling parallel between *McWilliams* and the instant case which readily lends the quoted portion of *McWilliams* to being appropriately paraphrased for purposes of this case as follows: Effective precautionary action on the part of respondent in the instant case would have been merely to have continued east on the traveled portion of Truman Road, and to have refrained from changing the course and direction of her vehicle so as to cause it to go partially onto the south shoulder of Truman Road and strike appellant. Causation in the instant case is obvious: But for the failure of respondent to maintain a proper lookout no accident in fact would have occurred.

Neither *McWilliams* nor the instant case represent a nuance or exception to the prevailing rule in this state relative to the submissibility of actionable negligence predicated on failure to keep a careful lookout. They merely represent definitive fact situations where the absence of evidence as to precise time and distance does not precude submissibility of failure to keep a careful lookout as being the proximate cause of an accident. Capsulated, appellant made a submissible case under his version of the facts and theory of the case —that respondent's vehicle struck him while he was standing on the south shoulder and clear of the traveled portion of Truman Road as a direct result of respondent's failure to keep a careful lookout. Having so

found, the trial court erred in refusing to give appellant's tendered verdict director lookout instruction, assuming it was otherwise legally correct.

■ The charge leveled by respondent against the refused lookout instruction, that it was not legally correct because it failed to contain an hypothesization of "the ultimate fact issue" of whether the impact occurred while appellant was standing on the shoulder and clear of the traveled portion of Truman Road or in the traveled portion of Truman Road, remains to be ruled on. In essence, respondent argues that a modified lookout instruction was mandatory since her version and appellant's version of where the impact occurred were at war with each other. Going one step further, the gravamen of respondent's argument appears to be that the refused lookout instruction, in order to have been legally correct, should have hypothesized facts requiring the jury to additionally find that the impact occurred while appellant was standing in a position of safety on the south shoulder of Truman Road.

Was the refused lookout instruction fatally remiss in not containing the hypothesis of facts which respondent contends it should have contained? This poses a vexing question, the proper answer to which partially lies in the motivating conceptual basis of Missouri Approved Jury Instructions. Prior to the adoption of Rule 70.01, instructions in civil cases were, in many instances, legal labyrinths, thereby failing to serve their functional purpose for juries and generating countless appeals, due, in large measure, to the concept of requiring detailed hypothesization of evidentiary facts. Two of the salutary goals of Missouri Approved Jury Instructions, to reduce the exorbitant number of appeals and to better achieve the functional purpose of instructions, were achieved by striking at the jugular vein of the cause. Rule 70.01(a), in clear simple terms, mandates that "[a]ll instructions shall be simple, brief, impartial, free from argument, *and shall not submit to the jury or require*

*findings of detailed evidentiary facts."* (Emphasis added.) To assure compliance with this mandate, thereby achieving the ultimate goals sought by the adoption of Missouri Approved Jury Instructions, Rule 70.01(b) requires the giving of an applicable Missouri Approved Jury Instruction "to the exclusion of any other on the same subject." Even the most superficial review of approved civil instructions postdating adoption of Rule 70.01 discloses that the emphasis is upon the submission of ultimate issues rather than evidentiary facts. In Zipp v. Gasen's Drug Stores, Inc., 449 S.W.2d 612, 617, the Supreme Court succinctly stated that "[t]he clear purpose of the new method of instructing juries, adopted by Supreme Court Rules 70.01 and 70.02, V.A.M.R., effective January 1, 1965, was to submit ultimate issues, not evidentiary details."

Missouri Approved Jury Instructions contains an applicable instruction when an injured party's theory of recovery is predicated on an alleged tort-feasor's failure to keep a careful lookout as the direct cause of the injuries sued for. The instruction referred to is precisely the same as the verdict director lookout instruction which was tendered by appellant and refused by the trial court. Since Missouri Approved Jury Instructions contains an applicable lookout verdict directing instruction, and since such was the instruction which appellant tendered and had refused, respondent's argument that the hypothesis of facts which she claims was necessary to make the refused lookout instruction legally correct is not persuasive. To find otherwise would do violence to the positive requirement set forth in Rule 70.01(b) that an applicable Missouri Approved Jury Instruction must be given "to the exclusion of any other on the same subject." Moreover, the instruction contained in Missouri Approved Jury Instructions on negligent failure to keep a careful lookout as constituting the direct cause of a claimed injury strongly, if not conclusively, demonstrates that the sole and only *ultimate issues* in a case submitted on lookout are (1) whether the alleged tort-feasor failed to keep a careful lookout, (2) whether the alleged tort-feasor was thereby negligent, and (3) whether as a direct result of such negligence the submitting party sustained damage. Conversely, the applicable lookout instruction contained in Missouri Approved Jury Instructions strongly, if not conclusively, suggests that the complaint leveled at the refused instruction by respondent does not encompass an ultimate issue. To succumb to respondent's argument would be tantamount to requiring a plaintiff's verdict directing lookout instruction to depart from the conceptual basis of Missouri Approved Jury Instructions and hypothesize evidentiary facts negating defensive or exculpatory evidence introduced by an opposing party. No requirement of this kind exists with respect to a plaintiff's verdict directing instruction under Missouri Approved Jury Instructions. Turner v. Cowart, 450 S.W.2d 441 (Mo.1969).

The true thrust of respondent's argument is that the refused instruction failed to place in issue her diametrically opposite version of the facts regarding where the point of impact occurred. Respondent, however, is not left without recourse to present her version of the facts. The Missouri Supreme Court and the drafters of Missouri Approved Jury Instructions, fortunately, had the prescience to provide for warring factual situations such as exist in the instant case. MAI 33.05, commonly referred to as the "third method" converse instruction, was apparently designed to eliminate the hiatus that respondent attributes to the refused lookout instruction. As stated in Bollman v. Kark Rendering Plant, 418 S.W.2d 39, 49 (Mo.1967), with reference to the use of MAI 29.01 (now MAI 33.05), "A defendant has the option to submit its theory of the case by way of a converse instruction, without being required to directly negative the plaintiff's theory of the case." The party doing so bears the risk of non-persuasion (MAI 33.05—Notes on Use) and must have independent evidence to support his theory of the case. Koirtyohann v.

Washington Plumbing & Heating Co., 471 S.W.2d 217 (Mo.1971). If the refused lookout instruction was required to contain the hypothesis of facts claimed necessary by respondent, the end result, from a practical standpoint, would be to relieve respondent from bearing the risk of non-persuasion regarding her version of the facts. As mentioned, respondent is entitled to submit her warring version of the facts to the jury and the proper vehicle for her to do so would be by means of a proper "third method" converse instruction (MAI 33.05). By so doing, respondent rather than appellant, and rightfully so, would bear the risk of non-persuasion regarding her version of the facts. Appellant's refused lookout instruction, composed, as it was, of a proper composite of applicable Missouri Approved Jury Instructions, MAI 17.01, MAI 17.05 and MAI 11.03, was supported by substantial evidence and was not fatally wanting because it failed to contain the hypothesis of facts claimed necessary by respondent. Perforce, the trial court erred in refusing to give the tendered instruction.

The final question posed by this appeal is respondent's "so what" argument —refusal of the lookout instruction constituted harmless error in view of the res ipsa loquitur verdict directing instruction given by the court. Submission of appellant's case to the jury, over his objection, on the theory of res ipsa loquitur emphasized the course and direction taken by respondent's vehicle rather than respondent's failure to keep a careful lookout. The latter, not the former, was appellant's theory of recovery. If more than lip service is to be given to the principle that a party is entitled to go to the jury on his theory of the case, if supported by the evidence, then the trial court's error in refusing the requested lookout instruction can not be sloughed off as merely harmless error. Additionally, the res ipsa verdict directing instruction given by the court was confusing to the jury, as evidenced by the following written message sent by the jury to the court after two and one-half hours of deliberation:

"We, the jurors, request verification on the second item of Instruction No. 3 [the verdict directing instruction predicated on res ipsa loquitur given by the court over the objection of appellant] in the sentence 'the automobile left the street and ran *across* the shoulder.' We the jurors recall nothing about the word *'across'.*" (Emphasis supplied by the *jury.*) There was no evidence in the record on the part of either appellant or respondent that respondent's vehicle ran *across* the shoulder. Appellant's evidence disclosed that respondent's vehicle came partially onto the shoulder and struck him and then returned to the traveled portion of Truman Road before coming to a stop. The confusion rendered by the res ipsa loquitur instruction is self evident in view of the jury's plaintive plea for guidance and direction. For these reasons, respondent's "so what" argument, as being curative of the trial court's error in refusing to give the requested lookout instruction, lacks both logic and persuasiveness.

Judgment reversed and cause remanded for a new trial.

All concur.