Diane COLE, a minor, by and through her next friend, Vernice Cole and Arthur Cole, Plaintiffs-Appellants,

v.

Earl BUMILLER et al.,
Defendants-Respondents.

No. 37200.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 28, 1976.

Motion for Rehearing As to Modified Opinion or to Transfer to Court en banc or to Transfer to Supreme Court Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

Samuel A. Goldblatt, William R. Kirby, St. Louis, Arnold T. Phillips, Clayton, for plaintiffs-appellants.

Wilburn A. Duncan, Clayton, Merle L. Silverstein, St. Louis, for defendants-respondents.

NORWIN D. HOUSER, Special Judge.

Minor child Diane Cole, pro ami, and her parents sued Earl Bumiller and wife, own-

ers of an apartment building in the City of St. Louis, and the managing realty company, for damages for personal injuries and medical expenses caused by Diane's ingestion of lead-based paint in the apartment rented by defendants to the Coles. Plaintiffs' theory was negligence per se, based upon an alleged violation of the city's lead poisoning ordinance. A jury returned a verdict for defendants. Plaintiffs appealed.

Under the ordinance city inspectors could inspect premises and take paint samples for analysis. If lead levels higher than those permitted by the ordinance were found a letter could be mailed to the property owner requiring him to abate the lead problem within 14 days after receipt of the notice, else he would then be in violation of the ordinance.

When plaintiffs moved into the apartment in November, 1970 it was well painted. There was no peeling of paint. In February or March, 1971 some of the paint started peeling. Occasionally Mrs. Cole would see Diane putting paint chips in her mouth. Diane was hospitalized in August, 1972 after she began stumbling and falling. Blood tests showed her serum lead level high. On September 7, 1972 a city inspector took paint samples from the apartment. A number of areas in the apartment were found to have paint with lead levels in excess of those allowed by ordinance. On September 14, 1972 the city sent defendants a notice, denominated a "14-day letter," informing them of these areas; the methods which could be used to correct the condition, and that the apartment would be reinspected on October 6, 1972 to determine whether the request to repair had been complied with. Following an inspection on October 3, 1972 the inspector noted, "The work inside nearing completion. Nothing done outside." Defendants had contracted for the outside work to commence October 9, 1972, but rain delayed the start and they asked for and were granted a 2-week extension. A notation in the city's file dated October 16, 1972 stated: "Apt. finished on inside. Work not finished on outside." A

notation dated November 1, 1972 stated that the west front door unit was still in violation. Reinspection on November 8, 1972 revealed that "all areas were OK." In her deposition, taken October 20, 1973, the acting health commissioner testified that as of November 8, 1972 the lead problem was "abated"; that "inside and out" the owners had done "a beautiful job" and that everything requested had been done in correcting the condition. At trial, however, the commissioner testified to her lack of personal knowledge and that her statement in the deposition had been based upon an oral report to her by Pat Wendling, administrator of the lead poison control service; that samplings of paint chips taken April 24, 1973 definitely showed lead violations in the Cole apartment; that Pat Wendling's report was made at least 3 or 4 months before April 20, 1973 and that the commissioner would have to modify her deposition statement.

Defendant Earl Bumiller testified on direct examination what steps were taken by him to make the necessary repairs by October 6; that he had the inside of the apartment "done" by October 5 or prior to that date, but the painters did not complete the outside of the building until about two weeks afterwards. His attorney then asked, "Q And then, did you complete or have done all the things that you were told to do?" Bumiller answered "We did more than that." On cross-examination he testified that he fully complied with the request contained in the notification of violation.

Plaintiffs sought to introduce in evidence their Exhibit 26, which was an information filed in city court against Earl Bumiller for a violation of the lead paint ordinance as of October 6, 1972. Plaintiffs' counsel also asked permission to cross-examine Bumiller with reference to the exhibit and about a purported conviction in city court of a violation of the lead paint ordinance and assessment of a fine as a penalty, for the purpose of impeaching Bumiller's alleged testimony that he complied with the lead paint ordinance. The court denied permission to use Exhibit 26 for impeachment purposes, and

refused plaintiffs permission to question Bumiller about the purported conviction. The basis of the court's ruling was that a proper foundation had not been laid.

Appellants' first point is that the court erred in making these rulings; that Exhibit 26 and the conviction were proper subjects of cross-examination in view of Bumiller's testimony on direct that he fully complied with the ordinance, and did more than the notice required; that failure to allow the cross-examination was misleading to the jury; that the conviction of a violation of the ordinance was material and relevant cross-examination where the charge of negligence was based upon its violation.

■ Appellants concede the general rule that a conviction for violation of a municipal ordinance may not be shown to impeach a witness or affect his credibility. *Willis v. Wabash R. Co.,* 284 S.W.2d 503, 512[9] (Mo.1955); *Stokes v. Wabash R. Co.,* 355 Mo. 602, 197 S.W.2d 304, 308 (1946); *Daggs v. St. Louis-San Francisco Ry. Co.,* 51 S.W.2d 164, 166 (Mo.App.1932); *Kansas City v. Roberts,* 411 S.W.2d 847, 849 (Mo. App.1967); 81 Am.Jur.2d Witnesses § 573, pp. 579, 580. Appellants claim that by testifying on direct examination that in response to the 14-day letter "We did more than" the city required, Earl Bumiller waived the general rule, and under § 491.-050 [1] appellants should have been allowed to cross-examine him concerning the conviction "for the purpose of testing good faith and whether he was truthful and to test his trustworthiness and credibility as a witness in his own behalf." Appellants say that by testifying on direct examination that he "fully complied" with the city's request Bumiller opened up the general subject and subjected himself to cross-examination with reference to any phase of the subject.

The court correctly ruled that no proper foundation was laid. The fact which appellants claim Bumiller testified to and which they sought to impeach was that he fully complied with the ordinance and did more in the way of repairs than the city's notice required. In the first place, Bumiller did not testify that he complied with the *ordinance.* Rather, he testified that he complied with what the city ordered him to do. In the second place, full compliance and completion of repairs, under Bumiller's testimony, occurred about two weeks *after* October 6, whereas the information alleges and the conviction finds noncompliance on or about October 6. At no time did Bumiller testify directly or by implication that he completed all required repairs by the deadline date October 6. He frankly and candidly admitted that as of October 6 he had *not* completed the repairs ordered on the outside of the building; that they were completed about two weeks later than that date; that by then (two weeks after October 6) he had done all the work requested and more. "Impeachment may only be made where the witness has been asked the specific question upon which he is sought to be discredited." *State v. Haynes,* 482 S.W.2d 444, 447[3] (Mo.1972).

■ The court correctly ruled out Exhibit 26 for another reason, namely, that it was not shown to have been certified or authenticated. In order to be admissible in evidence a public "record or document must be produced from or in the proper custody, and its identity, authenticity, and genuineness must be established, * * *." 32 C.J.S. Evidence § 626, p. 795, cited with approval in *Dyer v. Globe-Democrat Pub. Co.,* 378 S.W.2d 570, 582 (Mo.1964).

Nor was a proper foundation laid for cross-examination of Bumiller with reference to the purported conviction. Appellant's counsel told the court there was "evidence in the file" that Bumiller "was brought into court * * * and fined some money for not being in compliance," and stated their desire to interrogate Bumiller "for the purpose of impeachment relative to that conviction." There was no

1. "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer."

showing of record of the precise nature of the charge of which Bumiller was supposedly convicted, or the date or dates of the alleged violations, and appellants failed to demonstrate to the trial judge (or to this Court) in what respect the conviction would have contradicted some particular testimony given by Bumiller. As developed above, if the conviction was for a violation of the ordinance as of October 6 it would not have impeached Bumiller's testimony. To place the court in error it was incumbent on appellants to demonstrate with particularity the materiality and relevancy of the conviction, and this they failed to do. 27 Mo. Digest Trial ⊕45.

■ Appellants' second point is that the court erred in permitting defendants, over plaintiffs' objection that there was no showing of unavailability of the witness, to read the deposition of Dr. Bruce, acting health commissioner, for the reason that at time of trial she was within the city where the case was tried; that there was no showing that her medical practice and duties made her unavailable in person at time of trial, and no showing that she came within the exception of Rule 57.07(a), (a)(3)(C).

After her deposition was read, over objection, Dr. Bruce appeared in person in the courtroom, was sworn as a witness, called to the stand, and examined by appellants. She testified fully with respect to the taking of the deposition, explained her previous testimony, modified statements favorable to defendants made by her in the deposition, and implicated defendants in lead violations in the Cole apartment. Plaintiffs had a full opportunity to inquire of Dr. Bruce concerning the facts of the case. They took advantage of the opportunity. If there was error in reading the deposition without making a showing of absence from the city or unavailability, the subsequent appearance of Dr. Bruce in court, plaintiffs' calling Dr. Bruce to the witness stand and examining her, and her giving testimony favorable to plaintiffs, effectively cured the error. *St. Louis Nat. Bank v. Flanagan,* 129 Mo. 178, 31 S.W. 773, 780 (1895). In any event, appellants were not prejudiced.

In *Benjamin v. Metropolitan St. Ry. Co.,* 133 Mo. 274, 34 S.W. 590 (1896), after defendant closed its evidence and while plaintiff was introducing rebuttal evidence the witness deposed appeared in court. Thereupon the court, on motion, excluded the deposition "for the reason that the witness is present in court." The Supreme Court held this ruling free from error, saying, 34 S.W. l.c. 593: "But we are unable to see that defendant was in the least prejudiced by the ruling of the court. Defendant was permitted, by way of a cross-examination, to obtain from the witness a full confirmation of the evidence given in the deposition. Besides, by such examination defendant waived an exception to the court's ruling. It received the full benefit of the evidence of the witness, and it would be unfair to reverse the case on account of the irregularity by which he was forced to secure it."

■ Evidence of inspections of the property made in December, 1973 and January, 1974, purportedly showing violations, were excluded by the trial court on the basis of a representation by defendants' counsel that the Bumillers no longer owned the property at those times. Defendants' counsel promised to offer evidence as to the date the Bumillers disposed of the property, but he did not do so. Appellants' third point is that the court erred in failing to reverse its ruling excluding the inspections of December, 1973 and January, 1974 upon failure of defendants to come forward with evidence that they no longer owned the property on those dates. The difficulty is that appellants failed to include this specific point in their motion for a new trial. They made a general, broad and sweeping charge that "6. The Court erred in refusing to admit into evidence competent, material and relevant evidence and testimony offered by and on behalf of the plaintiffs." The general allegations of paragraph 6 were not sufficient to identify the particular ruling of the court asserted on appeal to have been erroneous. *Pasley v. Newton,* 455 S.W.2d 43 (Mo.App. 1970). We find no objection or request made by plaintiffs at the close of the evidence based on defendants' failure to offer

evidence of the date of termination of their ownership. Under these circumstances the alleged error was not preserved for appellate review, Rule 78.07, and is not to be considered on this appeal. Rule 84.13(a); *Oliver v. Bi-State Development Agency,* 494 S.W.2d 49 (Mo.1973); *Rotert v. Peabody Coal Co.,* 513 S.W.2d 667 (Mo.App.1974); *Walkley v. Sears, Roebuck & Co.,* 536 S.W.2d 169 (Mo.App.1976).

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.