**Barry D. FOWLER, Plaintiff-Appellant,**

**v.**

**S–H–S MOTOR SALES CORPORATION and Chrysler Corporation, Defendants-Respondents.**

**No. KCD 28843.**

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1977.

S. W. Longan, III, Kansas City, for plaintiff-appellant.

James H. Horn, James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent S–H–S.

Thomas O. Baker, Phillip B. Grubaugh, Gregory B. Allen, Kansas City, of counsel, Watson, Ess, Marshall & Enggas, Kansas City, for respondent Chrysler Corp.

Before PRITCHARD, P. J., and SWOFFORD, C. J., and DIXON, J.

DIXON, Judge.

Plaintiff brought suit against Chrysler Corporation and S–H–S Motor Sales Corpo-

ration for personal injuries and property damage sustained in a one-car accident involving a car operated by plaintiff. The plaintiff's theory was that defendants were liable under Section 402A, Restatement of Torts, by reason of a defective rear axle in plaintiff's vehicle. The trial court directed a verdict for S–H–S at the close of plaintiff's evidence, and the jury found for Chrysler. Plaintiff appeals, alleging seven points of error.

In the light of the complaints made, a somewhat detailed statement of facts is required.

The accident occurred on September 21, 1972, around midnight, when a new 1973 Dodge Coronet station wagon, driven and owned by plaintiff, crashed into the wall of the Jones Store at 13th and Walnut in Kansas City, Missouri. Before coming to rest at the Jones Store, the car had careened down 13th Street for three blocks. During the three blocks, the car hit a lightpost, cement retaining wall, tubular fence, fire hydrant, guardrail fence, a light pole, a small shack, another guardrail fence, went over the curb and into the Jones Store wall. The right front tire came off and was found on Grand Avenue. The claimed defect was that the rear axle of plaintiff's car was bent and its installation gave rise to stress which upon use resulted in axle failure.

Plaintiff first testified that he *stopped* at the light at 13th and McGee and after he started up, he put on the brakes. From this point until after the crash, plaintiff doesn't remember anything. Later, on cross-examination, plaintiff testified that as he approached the intersection of 13th and McGee he stepped on the brakes and that he had *not stopped* before he started into the intersection. An eyewitness testified that the car was going between 15–25 miles per hour and, after it crossed Grand, it was gaining speed. When the car reached Walnut, its estimated speed was 30 miles per hour. The eyewitness testified he did not see the brake lights come on.

Plaintiff suffers from a disease known as psychomotor epilepsy. By a pre-trial request in chambers, plaintiff sought to have any evidence of plaintiff's epilepsy excluded from the trial. The circumstances and the form of the request are critical to the issue plaintiff raises. During the pre-trial proceeding, counsel for plaintiff informed the court that his client suffered from epilepsy and that the defendants intended to make it an issue in the case. counsel then said to the court:

"We feel that it is not an issue in this case and would like a preliminary ruling on that question because we feel that it is being injected as contributory negligence."

The following colloquy then occurred:

"Well, it's more than contributory negligence, I suspect.

MR. LONGAN: The defendants' contention is—will be that it was this condition that caused the accident rather than a defect in the vehicle.

MR. HORN: Right.

MR. LONGAN: Do I understand the Court to rule that the matter of plaintiff's epilepsy is properly introduced over objection?

THE COURT: I can't tell yet.

MR. LONGAN: It would make a big difference in our presentation of our case, obviously, if the Court is going to let it in.

THE COURT: Well, I suspect it's going to get in."

Following that conference in chambers, the trial proceeded, and plaintiff's counsel, in his opening statement, fully disclosed the plaintiff's epileptic history. On direct examination, plaintiff testified that he has had epilepsy since 1957. During 1972, plaintiff testified that he had seizures about every 2–3 months and full blackout seizures about every 2–3 months. The seizures are the same type, but different strengths. Sometimes plaintiff was fully conscious and sometimes he was unconscious. During most seizures, plaintiff will just stand there with muscles tightened, perfectly rigid. The seizures last from a couple of seconds to 2–4 minutes. There is a pattern to the seizures in that they come in groups.

Plaintiff will have 2–5 seizures within a 1–3 day span and then a period of 1–3 months where he will not have a seizure. Plaintiff's doctor had advised him not to drive.

Plaintiff testified that he has never had a seizure where he did not receive a signal or warning ("aura") before the seizure and he did not have a seizure or warning on the day of the accident. An aura is the beginning of a seizure which can manifest itself by muscle spasms or abdominal pain or smell or taste and, when the aura forms, the seizure can spread slowly or rapidly. Plaintiff's psychiatrist testified that it was "quite possible" that plaintiff's blackout preceding the accident could have been caused by a seizure and that plaintiff could have had a seizure without having the warning of an aura.

At around 4 p. m. on September 21, 1972, plaintiff went to Midwest Motors to pick up his new car. Plaintiff started driving the car out of the shop when he hit a parked car. Two employees of Midwest Motors described plaintiff as just sitting there frozen to the wheel, rigid, hands and arms gripped to the steering wheel, and eyes straight ahead. Plaintiff "finally came to" and indicated he just wanted to sit a minute.

On direct examination, plaintiff admitted having been involved in two car accidents which were preceded by an epileptic seizure. In both accidents, plaintiff's car went off the right side of the road, hit a variety of objects, and struck another car. In one accident, plaintiff told an officer at the scene that he started feeling a seizure, put on the brake, blacked out, and the next thing he remembered he was crawling out of the car. Plaintiff further testified that he had been in five additional accidents which he blamed on mechanical failures. In all of these accidents, plaintiff's car left the road and collided with a number of different objects. In all five accidents, plaintiff was unconscious and could not remember what he hit. Plaintiff was not involved in other accidents, but there were occasions where he would feel a seizure coming on and would pull off the road, stop, and wait.

To support defendant's contention that the right rear axle of plaintiff's car fractured as a result of impact during the accident, defendant introduced in evidence a motion picture film of two test vehicles being crashed into a solid barrier. These tests were not prepared for the purpose of this lawsuit. The court heard testimony to determine whether the movie should qualify and the movie was first displayed for the court and plaintiff's counsel out of the presence and hearing of the jury. The exhibit was offered in evidence and received over plaintiff's objections. The film involved tests on a Chrysler proving ground with two automobiles, one a 1973 Dodge station wagon and the other a 1974 Plymouth Duster. While neither of the cars in the film was a 1973 Dodge Coronet station wagon, the 1973 station wagon used in the test was of the same structure and construction throughout as plaintiff's car. All three cars had identical axle design, as well as drive shaft, transmission and engine design. The test cars were crashed at 30 miles per hour and impacted at 90 degrees to the barrier. Plaintiff's car impacted at the same or very close to the same angle. In these tests, the engines are not normally running, but this would not be significant in measuring the forces which travel the load path of the power train. The power train load path is a term used to describe the path the force follows back through the engine, transmission, drive shaft, and differential to the rear axle. Being more resistant to crushing, the power train load will stop on impact while the rest of the car is still moving forward. This results in bending in the axle assembly and subsequent fracture on the right side. The fracture occurs on the right side, the same location as the fracture of the axle in plaintiff's car, because the axis of the drive train isn't exactly down the middle of the car. Comparing still photographs of the underbody of the Dodge station wagon used in the tests with photographs of the same areas in plaintiff's car, the damage is the same on both cars, except the damage to plaintiff's car looks a little more severe. There is no difference be-

tween this test vehicle and plaintiff's car with respect to the underside of the car. Two tow truck drivers testified that in their experience they have seen rear axles broken as the result of front end impacts.

Defendant's evidence further showed that no part of the manufacturing process could have produced a bend in the axle shaft like the one in plaintiff's car. An axle shaft bent like the one from plaintiff's car could not be assembled on a car during the manufacturing process. To illustrate this, defendant introduced a flat model of one side of the rear axle assembly which depicted an axle similar to the axle on plaintiff's car. The diagram fairly and accurately represented on a flat scale the axle in plaintiff's car. For purposes of the model an axle was prepared which had a bend similar to the bend in plaintiff's axle. Plaintiff's objection to the use of this exhibit was overruled.

Plaintiff assigns seven points of error which are presented separately, but which may be grouped under four general headings.

### I

█ Plaintiff's first point complains that the trial court erred in permitting defendants, over the motion and objection of the plaintiff, to inject into the trial the false issue of causation by reason of plaintiff's epilepsy. This point is broken into subpoints: that the court erred in overruling the plaintiff's motion in chambers before opening statement; that the court erred in allowing the issue of epilepsy to be interjected under the guise of legal causation; and error in refusing the plaintiff's instruction withdrawing consideration of plaintiff's epilepsy. Subsumed also under the point is the claim that further objection would be futile.

When this point is considered in the light of the evidence at trial, it is clear that plaintiff has failed to preserve any claim of error with respect to the admission of evidence of his epileptic state. Rule 84.13(a); *Kern v. Danbury*, 471 S.W.2d 489 (Mo.App. 1971); *Poage v. Parker*, 343 S.W.2d 203

(Mo.App.1961). A review of the transcript, the relevant portions of which are included in this opinion, demonstrates that plaintiff, failing in his initial attempt to exclude the evidence prior to trial, elected as a tactical matter to open the question in his opening statement. The attempt to take the sting out of subsequent efforts by defendants to show the plaintiff's disability was a tactical choice. The attempt by the plaintiff to remedy the preservation problem by the citation of *Miller v. Kamo Electric Cooperative, Inc.*, 351 S.W.2d 38 (Mo.App.1961), is inappropriate. In *Miller*, a ruling had been made by the trial court, and *Miller* holds only that offers of proof were not necessary to preserve an objection for review under the conditions of that case.

█ The trial court's denial of plaintiff's instruction which would have directed the jury to disregard evidence of plaintiff's epilepsy was proper. Plaintiff argues that the issue of epilepsy goes to the issue of contributory negligence, which is not a defense to an action founded on Restatement of Torts, Section 402A. It is the law in Missouri that contributory negligence is not a defense to strict liability in tort and plaintiff's statements in this regard are correct. *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969). Evidence of plaintiff's epilepsy was directed to the issue of causation and on this issue it was relevant and proper. Defendant is entitled to submit his version of the facts to the jury. *Williams v. Christian*, 520 S.W.2d 139 (Mo.App.1974); *Wilson v. Checker Cab Company*, 431 S.W.2d 122 (Mo.1968); *Bollman v. Kark Rendering Plant*, 418 S.W.2d 39 (Mo.1967). *Williams* was a tort case involving a pedestrian who was struck and injured by an automobile. The jury found for the defendant, and plaintiff-pedestrian appealed. In reversing and remanding for a new trial for failure to give a lookout instruction requested by plaintiff, the court stated defendant "is entitled to submit her warring version of the facts." *Williams, supra*, 520 S.W.2d at 146. In *Wilson*, plaintiff claimed personal injury caused by the negligence of a taxi driver in permitting

the cab to move forward while she was alighting. Defendant offered evidence to show that plaintiff fell about twenty feet from the cab. Verdict directing instructions were submitted to the jury concerning these ultimate issues of fact. The jury found for defendant, and the trial court granted plaintiff a new trial on the ground that there was error in giving defendant's instruction. In reversing the trial court's order granting plaintiff a new trial and remanding the cause with directions to reinstate the verdict, the appellate court recognized that the submission of "a converse instruction does not require plaintiff's theory of the case to be directly or precisely conversed." *Wilson, supra,* 431 S.W.2d at 123. In *Bollman,* a case involving a claim for personal injuries allegedly sustained as a result of negligent failure to install guards on a winch, the court held that "[a] defendant has the option to submit its theory of the case by way of a converse instruction, without being required to directly negative the plaintiff's theory of the case." *Bollman, supra,* 418 S.W.2d at 49. Under the above cited cases, defendant may offer evidence and submit his own theory of the case to the jury on the issue of causation. Defendant is not confined to plaintiff's theory and need not direct his evidence solely to whether or not the axle was defective as plaintiff in this case contends. The effect of submitting plaintiff's jury withdrawal instruction would have been to deny defendant his option to present his side of the case on the causation issue. It was proper for the trial judge to deny such an instruction.

## II

Three of the plaintiff's points may be considered together. They relate to the admission of evidence offered by the defendants in the nature of tests or models and a purported limitation on cross examination. The first such claim is with respect to a motion picture film. The film was not prepared for the purpose of this litigation but was a film developed by the Chrysler Corporation as a general part of its testing process and involved the filming of a series of crashes by vehicles. As previously noted, the vehicle was not identical with the plaintiff's vehicle, but was apparently of substantially similar construction and design. Likewise, although the impact was somewhat different in the test film than in the circumstances of this case, there is a considerable similarity.

■ Admission of evidence of experiments, or permitting them to be performed in court, is a matter within the sound judicial discretion of the trial judge. In this regard, his discretion should not be interfered with on appeal unless it is manifest that it has been abused. *Klaesener v. Schnucks Markets, Inc.,* 498 S.W.2d 555 (Mo.1973); *Lynch v. Railway Mail Association,* 375 S.W.2d 216 (Mo.App.1974). The trial judge is not required to find that the circumstances of the experiment are exactly identical to those of the accident, but only that they are substantially similar. A recent Missouri Supreme Court decision set forth the rule as follows:

"The law is well settled that experimental evidence is admissible when the experiment was made under conditions substantially similar in essential particulars to the conditions which prevailed at the time of the occurrence in suit, and that the conditions need not be identical. . . The similarities must be in those circumstances or conditions as might supposedly affect the result in question; and the degree of similarity or difference should be judged in the light of the fundamental principle that any fact should be admissible which logically tends to aid the trier in determination of the issue." (omitting cited cases). *Blevins v. Cushman Motors,* 551 S.W.2d 602, 610 (Mo.1977).

In the instant case, the trial judge determined that the crash tests were substantially similar to those of plaintiff's car accident. No abuse of discretion has been made to appear.

The New Jersey case cited by plaintiff, *Balian v. General Motors,* 121 N.J.Super. 118, 296 A.2d 317 (1972), is inapposite. The New Jersey Superior Court reversed the

trial court's judgment in favor of defendants by concluding that the motion pictures should have been excluded from exhibition to the jury and admission into evidence. But in reaching its conclusion, the *Balian* court considered significant many factors not present in the instant case. Defendant's failure to comply with the spirit of that state's procedural rules of discovery and a court order, in combination with the questionable tactics of defendant's counsel, were considerations presented in that case, which are not present here.

■■■■ Plaintiff also objects to the trial court's admission of a flat model of a rear axle shaft offered by the defendants for the purpose of showing the axle could not have been assembled in the faulty condition claimed by the plaintiff. The plaintiff failed to include a specific claim of error in his motion for new trial concerning this evidence. Rule 78.07 provides that all claims of error must be included in the motion for new trial to be properly preserved. The only allegation in the motion for new trial remotely approaching a claim of error in this regard is that the court erred in admitting irrelevant, incompetent, and immaterial evidence. This allegation is insufficient to draw the court's attention to the particular ruling claimed·to be erroneous and is not sufficient to identify a particular ruling. *Cole v. Bumiller*, 549 S.W.2d 95 (Mo.App.1977). Plaintiff has also failed to preserve for review a claim that the trial court erred in limiting plaintiff's cross examination of defendant's expert witness. No claim of error concerning such action by the trial court appears in the motion for new trial.

### III

■■■■ Plaintiff urges error on the part of the trial court in refusing to permit the plaintiff to offer rebuttal evidence at the close of all the evidence concerning plaintiff's version of the accident in the Midwest Motors parking lot. Plaintiff's claim is that he would have offered evidence that the incident occurred on August 15, 1972, rather than on September 21, 1972, as the defendants' witnesses testified. Under Missouri practice, the decision whether to reopen a case after both sides have closed to permit the introduction of evidence is a matter within the trial court's discretion. Unless it appears that such discretion has been abused, in that injury has resulted therefrom to the complaining party, the decision of the trial court will not be interfered with on appeal. *Prevost v. Wilkin*, 358 S.W.2d 417 (Mo.App.1962); *Russell v. Wyant*, 214 Mo.App. 377, 253 S.W. 790 (1923); *Buck v. St. Louis Union Trust Co.*, 267 Mo. 644, 185 S.W. 208 (1916). The rebuttal evidence was not so material that it would have produced a different jury verdict. In the first place, assuming the trial court had permitted Fowler to testify again and permitted the introduction of the documents in question, the jury still could have believed the incident at Midwest Motors occurred in September or the jury could have believed there were two incidents, one in August and another in September. In the second place, even if the jury believed the incident in question did not occur in September, there was ample evidence from which the jury still could have found for defendant. When and if such an incident occurred was a collateral issue. Such evidence would have been cumulative, and its refusal is not an abuse of discretion.

### IV

■■■■ Plaintiff contends the the trial court erred in sustaining defendant S–H–S Motor Sales Corporation motion for directed verdict at the close of plaintiff's evidence. He claims prejudice because the directed verdict permitted the seller's erroneous defense of contributory negligence to remain in and permeate the trial in the minds of the jury. For error to be reversible, it must have been prejudicial to the complaining party. *Sanders v. H & S Motor Freight, Inc.*, 526 S.W.2d 332 (Mo.App. 1975); *Kennedy v. Tallent*, 492 S.W.2d 33 (Mo.App.1973). The burden of establishing that error was prejudicial is on the appellant. *Nash v. Plaza Electric, Inc.*, 363 S.W.2d 637 (Mo.1962). Unless the error

committed materially affected the merits of the case, it will not cause reversal. Harmless error is not ground for reversal. Rule 84.13(b); *Neavill v. Klemp*, 427 S.W.2d 446 (Mo.1968). Plaintiff brought this action against Chrysler Corporation and S-H-S under the same theory of liability. It was later determined by the jury verdict that plaintiff failed to prove his case against Chrysler Corporation. Since the jury found the identical issues in favor of Chrysler as it would have had to find for S-H-S had S-H-S remained in the case, any error in dismissing S-H-S was harmless and is not ground for reversal. *Jackson v. Haley*, 432 S.W.2d 281 (Mo.1968); *Sutton v. City of St. Joseph*, 265 S.W.2d 760 (Mo.App.1954). Plaintiff was not prejudiced by this ruling. The trial judge merely informed the jury that Chrysler was the only defendant left in the action. The trial judge never mentioned the words "negligence" or "contributory negligence" in addressing the jury. As to advising juries on verdict-directing actions, this court has stated, "we are aware of no ruling taking the view that it affects juries prejudicially in instances where another defendant thereafter remains in the case." *Elmore v. Kansas City*, 333 S.W.2d 795, 798 (Mo.App.1960).

Plaintiff's final claim is that the alleged errors in the aggregate constitute cumulative error. The discussion above indicates only that some of the points raised are not error. As to those properly raised, they are not so related in effect as to require consideration, even if error were assumed.

Judgment affirmed.

All concur.